WALTER H. COLEMAN *vs.* HARTLEY LORD, and others.

York.    Opinion February 25, 1902.

*Deed.   Private Way.   Plan.   Survey.   Practice.   Verdict.*

When lots of land have been granted, designated by numbers, according to a plan referred to, which has resulted from a survey actually made and marked upon the face of the earth, the lines and corners fixed by that survey determine the extent and bounds of the respective lots.

When the deed also gives the boundaries of the lots, and the bounds so given are precisely the same as those appearing upon the plan referred to, the same rule applies.

The court may properly instruct the jury to return a verdict for either party where it is apparent that a contrary verdict would not be allowed to stand on the evidence introduced.

Exceptions by plaintiff.    Overruled.

Trespass for breaking and entering plaintiff's close situated in Kennebunkport and described as follows: "bounded southerly by Beach Avenue, so-called; westerly by lot number twenty-one on the plan of property of the Kennebunkport Sea Shore company; northerly by Fort Lane, so-called; and easterly by lot number eighteen on said plan."

The writ alleged that defendant broke down, damaged and spoiled one hundred and fifty feet of fence and trellis work of the plaintiff belonging to and inclosing said close.

The plea was the general issue, with a brief statement setting out in effect that defendants were officers and agents of the Kennebunkport Sea Shore company, grantor in the deed to the plaintiff of the premises described in the writ, which company previous to the date of said deed was the owner of a large tract of land of which plaintiff's close was a part; that said company had, in 1883, divided said tract into lots and private ways and made and recorded a plan thereof, which is the same plan referred to in plaintiff's writ; that said Fort Lane was one of said private ways and the premises described in the

writ were two of said lots; that at the date of said deed to plaintiff and said pretended trespass said company was, ever since has been, and now is the owner of several lots on Fort Lane and various other of said ways connecting therewith; that the fence referred to in plaintiff's writ at the time of the alleged trespass was within the limits of said Fort Lane; that the trellis referred to was a building, and the portion of the same which was removed was also within the limits of said Fort Lane; that whatever was done in the premises by said defendants was done by them as officers and agents of said company, and that plaintiff had no right, title or interest in and to said Fort Lane other than the right to pass over the same.

After the evidence was taken out, the presiding justice directed the jury to find a verdict for the defendant, which was done. To this order and ruling the plaintiff took exceptions.

The facts appear in the opinion.

*G. F. and L. Haley; A. E. Haley,* for plaintiff.

*J. W. Symonds, D. W. Snow, C. S. Cook, C. L. Hutchinson; H. Fairfield and L. R. Moore,* for defendants.

SITTING: WISWELL, C. J., EMERY, STROUT, FOGLER, POWERS, JJ.

FOGLER, J. This is an action of trespass quare clausum and comes to this court upon exceptions to an order of the presiding justice directing the jury to return a verdict for the defendant, which was accordingly done.

The locus was conveyed to the plaintiff by the Kennebunkport Sea Shore company by deed dated June 6, 1888, and is described in the deed as, "a certain parcel of land situate in Kennebunk in said county of York, and being lots No. 19 and 20 upon a plan of lots dated September 13, 1883, and filed with York county deeds Sept. 17, 1883, Book of plans No. 3, page 4, bounded and described as follows, viz: Beginning at a stake on Beach Avenue on said plan at the southeasterly corner of lot No. 21; thence northerly by said lot one hundred feet to 'Fort Lane'; thence easterly by said Lane, two hundred feet to the northwesterly corner of lot No. 18; thence southerly by said lot No. 18 one hundred feet to the above named

Beach Avenue; and thence westerly by said avenue two hundred feet to the point begun at."

Fort Lane is a private way the fee of which, at the time of the conveyance to the plaintiff, was and now is in the plaintiff's grantor, the Kennebunkport Sea Shore company. The plaintiff's northerly line is, therefore, the southerly side of Fort Lane. *Southerland* v. *Jackson,* 30 Maine, 462, 50 Am. Dec. 633 ; *Same* v. *Same,* 32 Maine, 80 ; *Bangor House* v. *Brown,* 33 Maine, 309; *Palmer* v. *Dougherty,* 33 Maine, 502, 54 Am. Dec. 636.

In 1882, the Kennebunkport Sea Shore company being the owner of a large tract of land which included the plaintiff's premises and also what is now known as Fort Lane, caused the tract to be surveyed and subdivided into lots and parks and streets, and caused the plan referred to in the plaintiff's deed to be made in accordance with the survey and recorded.

In June, 1888, the company conveyed to the plaintiff the lots described in his deed. In the fall of the same year the plaintiff erected a cottage upon the premises, and in 1891 or 1892, he built along his Fort Lane line a fence and a building in part of lattice work all of which he claims are upon his own land. The defense contends that the fence so built was from six inches to a foot, varying at different points because of irregularities in the fence, over the plaintiff's line and within the limits of the lane, and that the lattice wall was from six to seven inches within the limits of the lane.

In May, 1895, Mr. Hartley Lord, representing the Kennebunkport Sea Shore company, of which he was one of a committee having the management of the company's land, and others acting under his directions, took down the fence and cut off the lattice wall to a line one inch within the limits of the lane and removed the materials to a vacant lot. The plaintiff brings this suit to recover damages for such acts. The question at issue here is where upon the face of the earth is the southerly line of Fort Lane.

Where lots have been granted, designated by number, according to a plan referred to, which has resulted from an actual survey, the lines and corners made and fixed by that survey are to be respected as determining the extent and bounds of the respective lots. *Pike* v.

*Dyke*, 2 Maine, 213, 11 Am. Dec. 62; *Stetson* v. *Adams*, 91 Maine, 178; *Bean* v. *Bachelder*, 78 Maine, 184.

In the case now before us the plaintiff's deed conveys to him lots numbered 19 and 20 upon a designated plan. It is true that the deed gives the boundaries of the lots, but the bounds so given are precisely those appearing on the plan.

Mr. E. C. Jordan, an experienced civil engineer, testifies that in 1882, he surveyed and laid out into lots the land of the Kennebunkport Sea Shore company, including the plaintiff's two lots; that he placed stakes at the corners of the lots; that the survey was not a compass survey, but a transit survey; that all physical monuments he took offsets to and supplemented them by drill holes for purposes of reproduction of any point in the absence of stakes; that he made the recorded plan from his actual survey; that in May, 1894, at the plaintiff's request he re-surveyed the plaintiff's lots and this re-survey corresponded with his original survey and plan, and that the plaintiff's fence was from six inches to a foot, varying by reason of irregularities in the line of the fence, within the limits of Fort Lane, and the side of the lattice work was at one corner six inches and at the other corner seven inches within the limits of the lane; that subsequently at the request of the Kennebunkport Sea Shore company, he re-surveyed the line of Fort Lane and obtained the same result.

The plaintiff, upon whom is the burden of proving the trespass complained of, testifies that when he purchased his lots there were standing certain stakes, which he seems to assume marked the corners of his lots; that in the fall of 1888, after he had built his cottage and cleared up his grounds he took steps to "perpetuate" as he calls it, his bounds, by removing the stakes and putting in their places stone monuments where it was possible so to do, and by placing an iron bolt in the ledge where a stone monument could not be set; and that the fence and the northerly side of his lattice were located on a line drawn between his monuments on Fort Lane and upon his own land. It will be observed that the only stake, or other visible monument, named in the plaintiff's deed is a stake on Beach Avenue on said plan at the southeasterly corner of lot No. 21.

When a plan of a tract of land is made with intent to represent

a survey, actually made and marked upon the face of the earth, if there be a variance between the survey and the plan, the plan is controlled by the survey. *Williams* v. *Spaulding*, 29 Maine, 112; *Ripley* v. *Berry*, 5 Maine, 24, 17 Am. Dec. 201.

In the case at bar no variance appears between the survey and the plan. The only testimony as to the actual original survey is that of the engineer by whom the survey and plan were made. He testifies that the plan was made by him in accordance with the survey; and that two subsequent re-surveys made by him show no error or variance. He established the southerly line of Fort Lane, and found that the plaintiff's fence and that part of his lattice were northerly of that line and therefore within the limits of the lane.

We think that the testimony upon which the plaintiff relies is too remote and uncertain to control the positive, uncontradicted testimony of the engineer, corroborated by his plan.

It is claimed by the plaintiff that a gate post which was removed by the defendants was attached to the end of a plank which extended about four feet under the surface upon the plaintiff's land, and that the defendants removed the entire plank including that portion which was within the plaintiff's limits, and that the defendants are to that extent guilty of trespass.

We do not think so. The defendants had the right to remove the obstructions, doing to the plaintiff's property no greater damage than was reasonably necessary. We do not think that the removal of the plank in its entirety, which after the removal of the post served no useful purpose, instead of cutting in two and thus destroying or diminishing its value, was in excess of their right. Besides, "de minimis non curat lex."

It is a well established rule of procedure in this state, that the court may properly instruct the jury to return a verdict for either party where it is apparent that a contrary verdict would not be allowed to stand on the evidence introduced. *Market and Fulton Natl. Bank* v. *Sargent*, 85 Maine, 349, 35 Am. St. Rep. 376; *Bennett* v. *Talbot*, 90 Maine, 229.

This case falls within the rule. If the case had been submitted to the jury and a verdict rendered for the plaintiff, it would have

been the duty of this court to set aside the verdict as against evidence.

*Exceptions overruled.*