## MORTTIER L. THURSTON *vs.* WILLIAM MCMILLAN.

## Oxford.    Opinion February 23, 1911.

*Trespass Quare Clausum.    Presumptions.    Deeds.    Seizin.    Evidence.*

1.  To maintain an action of trespass quare clausum the plaintiff must show that he had either actual or constructive possession of the premises at the time of the alleged acts of trespass.  If he claims under a quitclaim deed, he must show that his grantor had possession at the time of the execution of the deed, either actual or constructive, or that he himself has since entered and become possessed of the premises.

2.  When one has the legal title, in the absence of proof of actual adverse possession by someone else, the law implies that he has a constructive possession, sufficient to maintain the action of trespass quare clausum.

3.  A quitclaim deed, or a deed of "a right, title and interest" in land, is not prima facie evidence of title.

4.  Possession alone is a sufficient title against a wrongdoer.

5.  The case shows sufficient evidence of possession to enable the plaintiff to maintain an action of trespass quare clausum against a wrongdoer.

6.  A warranty deed, or a deed of conveyance, acknowledged and recorded, itself raises a presumption that the grantor had sufficient seizin to enable him to convey, and also operates to vest the legal seizin in the grantee. It is prima facie evidence of title.  And the same rule applies to a mortgage in the usual form.

7.  The presumption of seizin arising from a deed of conveyance is only a presumption, and may be rebutted by showing that the grantor had no title.

8.  When the defendant in trespass quare clausum justifies under a title originating in a mortgage deed, and the plaintiff in rebuttal shows that the mortgagor had a paper title, but one which was defective, and nothing else appears, the court, hearing the case on report, infer that the defective title was all the title which the mortgagor had.

On report.    Judgment for plaintiff.

Action of trespass quare clausum fregit wherein it was alleged that the defendant with force and arms broke and entered the plaintiff's close in Rumford, "and then and there cut down and peeled fifty cords of soft wood or pulp wood then and there growing, of great value, to wit, the value of two hundred and fifty dollars," etc.

Plea, the general issue, with brief statement that the "defendant claims to justify under Lucinda E. Bean and Martha E. Bartlett, who claimed title to the lot described in the plaintiff's writ."

At the conclusion of the evidence the case was reported to the Law Court with the stipulation that "upon so much of the evidence as is legally admissible the court is to render such judgment as the legal rights of the parties may require, and if judgment be for plaintiff, it is agreed that the damages are to be nominal only; and in any event it is agreed by the parties that the result of this suit shall determine the title to the land upon which the trespass is alleged to have been committed."

The case is stated in the opinion.

*H. H. Hastings*, and *Foster & Foster*, for plaintiff.

*James S. Wright*, and *A. E. Herrick*, for defendant.

SITTING:    EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

SAVAGE, J.    Trespass quare clausum.    To maintain the action, the plaintiff must show that he had either actual or constructive possession of the premises at the time of the acts of alleged trespass. So, if he claims under a quitclaim deed, he must show that his grantor had possession at the time of the execution of the deed, either actual or constructive, or that he himself has since entered and become possessed of the premises.    *Marr* v. *Boothby*, 19 Maine, 150.    If he had the legal title, in the absence of proof of actual adverse possession by someone else, the law implies that he had a constructive possession, sufficient to maintain the action.    *Griffin* v. *Crippen*, 60 Maine, 270; *Butler* v. *Taylor*, 86 Maine, 17.    If he did not have the title, he must show actual possession.    For the gist of the action is the invasion of the plaintiff's possession. *Savage* v. *Holyoke*, 59 Maine, 345; *Kimball* v. *Hilton*, 92 Maine, 214.

The plaintiff's claim of title begins in 1850 with the deed of certain persons, styling themselves administrators of the estate of Joseph H. Wardwell, to Jeremiah Martin.    The deed lacked the

essentials of an administrator's deed, and did not convey, and did not purport to convey, any estate which had belonged to the intestate. It was a quitclaim deed of the "right, title and interest" of the grantors. And it is not shown that they had any. Therefore this deed conveyed no title. *Coe* v. *Persons Unknown*, 43 Maine, 432.

The succeeding links in the chain are quitclaim deeds of "right, title and interest" merely, until we come to the last one, which is a quitclaim deed of the land, from William H. Foye to the plaintiff, dated June 4, 1909. A quitclaim deed, or a deed of "a right, title and interest" in land, is not prima facie evidence of title, *Butler* v. *Taylor*, supra. From which it appears that Foye had no title by deed to the premises, and conveyed none to the plaintiff. Therefore the plaintiff's claim of constructive possession fails.

There is no evidence that any of the prior grantors were in possession at the time they gave their deeds. But the plaintiff contends that Foye was in actual possession, when he quitclaimed to the plaintiff, and that plaintiff after taking the deed entered and took possession, before the trespass. If so, then the plaintiff was in actual possession, and is entitled to maintain the action, unless the defendant can show that he entered under a better title. Possession alone is a sufficient title against a wrongdoer. *Hunt* v. *Rich*, 38 Maine, 195; *Melcher* v. *Merryman*, 41 Maine, 601. Possession is better than no title. *Moore* v. *Moore*, 21 Maine, 350; *Look* v. *Norton*, 85 Maine, 103.

The premises in question, the title to which seems to have been long in dispute, consist of an unenclosed lot of wild land, numbered 83 in the third division of lots in Rumford. So far as the case shows it has never been cleared, or cut upon, or used in any manner, except that a few trees have been cut under the authority of the parties who claim adversely to the plaintiff, and these were cut, so it appears, for the purpose of bringing the dispute to a head.

The case shows that Mr. Foye, who took a quitclaim deed of his grantor's "right, title and interest" in 1894, went onto the lot to look the timber over in 1895; and again in 1904 to make an estimate of the timber; and again in 1906, having heard that

someone was cutting there; and finally in 1907, apparently moved by a similar reason. Meanwhile, in 1898, Mr. Foye employed an agent, who lived about two hundred rods from the lot, to keep watch of it. And from 1898 until Foye quitclaimed to the plaintiff in 1909, the agent as he says "kept track of what was going on" on the lot, looked the lot over each year for signs of trespassing, went onto the lot at all times when others were chopping, or were prepared to chop, and warned them of the dispute about the title, and there would be "trouble" if they persisted in chopping. As evidence of the character of Mr. Foye's possession, such as it was, it is shown that on two or more occasions he personally forbade men to cut upon the lot. After the plaintiff took his deed, and before the acts of alleged trespass, he went upon the lot, and later went again and took more formal possession in the presence of a witness. The only evidence of any acts of possession by anyone else, during this period, is the fact that a surveyor employed by the parties claiming adversely to the plaintiff run one line of the lot in 1899, and the entries in 1907 and 1909 of persons acting under the authority of the adverse claimants and the cutting of a few trees for the purpose of bringing the dispute to a head.

The first question is, upon this evidence has the plaintiff shown sufficient possession of the lot to be entitled to maintain this possessory action for trespass, unless the defendant defends under a better title? We think he has. We are not concerned now with the character of a possession which would avail after a sufficient lapse of time against the true owner, but of a possession sufficient to entitle the possessor to keep off trespassers. From the nature of things, nothing more could have been expected to be done than was done. There was not only a possession, with continued watchfulness to keep others from entering, but there were open acts of dominion which sufficiently show the nature of the possession.

We turn now to the defense. The defendant justifies under the title of Lucinda E. Bean to two-thirds in common and undivided of the premises, and of Martha E. Bartlett to one-third; and it is admitted that whatever was done by the defendant upon the prem-

ises was done at the direction and under the authority of Mrs. Bean
and Mrs. Bartlett. The defendant introduced Mrs. Bartlett's chain
of title as follows: quitclaim deed dated January 18, 1890, by John
F. Stanley and Frank Stanley to Henry O. Stanley of "right, title
and interest" in one-third in common of lot 83; quitclaim deed
dated December 31, 1894, by Henry O. Stanley to John S. Harlow,
of the same "right, title and interest:" quitclaim deed dated March
10, 1898, by John S. Harlow to Charles P. Bartlett of the same
"right, title and interest;" and devise from Charles P. Bartlett to
Martha E. Bartlett. The defendant showed nothing as to title of
John F. Stanley and Frank Stanley. From this it is evident, for
reasons already stated, that Mrs. Bartlett has no title to the one-
third claimed for her.

The defendant introduced Mrs. Bean's chain of title, as follows:—
mortgage, with covenants, of lot 83, dated February 18, 1892, by
John F. Stanley and Frank Stanley to the South Paris Savings
Bank; assignment of mortgage, February 15, 1898, by the South
Paris Savings Bank to Alpheus S. Bean; foreclosure by Bean in
1898; and devise from Alpheus S. Bean to Lucinda E. Bean.

A warranty deed, or a deed of conveyance, acknowledged and
recorded, itself raises a presumption that the grantor had sufficient
seizin to enable him to convey, and also operates to vest the legal
seizin in the grantee. It is prima facie evidence of title. *Blethen*
v. *Dwinel*, 34 Maine, 133; *Wentworth* v. *Blanchard*, 37 Maine,
14; *Butler* v. *Taylor*, 86 Maine, 17; *Ward* v. *Fuller*, 15 Pick.
185. A mortgage deed in the usual form is a deed of conveyance,
with a defeasance. *Jones* v. *Smith*, 79 Maine, 446. And the same
rule as to presumption of seizin applies to title held under a mort-
gage deed, as to that held under any other deed of conveyance.
So that, unrebutted, the evidence for the defendant would show a
prima facie title to two-thirds in common of the lot in Mrs. Bean.
This would be a better title than the plaintiff's possession, and
would defeat his suit.

But the presumption of seizin arising from a deed of conveyance
is only a presumption. It is a presumption of fact, and is rebut-
table. Such a deed is only prima facie evidence of title. To rebut

the effect of it, it may be shown that the grantor had no title. In this case, after the defendant had introduced the mortgage deed from the Stanleys to the bank, the plaintiff introduced, in rebuttal, a tax deed of the lot, dated January 13, 1886, to one Charles A. Kimball, and a quitclaim deed, dated January 17, 1890, from Kimball to the Stanleys, of his "right, title and interest." The tax deed is admittedly invalid, and conveyed no title. Hence the quitclaim deed, from Kimball to the Stanleys conveyed nothing. If that was all the title the Stanleys had, their mortgage to the bank conveyed nothing, and necessarily Lucinda E. Bean took nothing by her devise.

The defendant, however, contends that the tax deed to Kimball and the quitclaim deed from Kimball to the Stanleys did not have any tendency to rebut the presumption of title arising from their mortgage to the bank. Non constat, he says, that the Stanleys did not have other title. This may be true. But the question recurs whether, if the Stanleys had other title, the defendant should not have shown it, after the invalid chain of title had been traced to them. Practically the question is where was the burden of proof at that juncture in the case. We think the rebutting evidence was enough to meet the presumption, and overcome it. The burden was then on the defendant to show that the Stanleys had other title. If this be not so, the presumption, which is merely a presumption of convenience, to take the place of proof of livery of seizin, *Ward* v. *Fuller*, 15 Pick. 185, might become well nigh impregnable. The sources and instruments of title are presumptively within the knowledge of those who claim under them, rather than with strangers to that title. And if the title exists, failure to show it is significant and probative. When it is shown that the Stanleys had a paper title, though one that was defective, and nothing else appears, we think it should be inferred that that was all the title they had when they gave their mortgage.

We conclude therefore that it is not shown that either of the parties under whom the defendant justifies had any title. The defendant was a trespasser, and as such cannot defend against the plaintiff's possessory title. It is agreed that the damages are nominal.

This case comes up on report, and it was stipulated "that the result of this suit shall determine the title to the land." And we are asked by counsel to make such a determination. Necessarily we have discussed the question of title on both sides, so far as it was necessary to a decision of this action of trespass. But since the record does not show that Mrs. Bean and Mrs. Bartlett have become parties to the suit by assuming the defense, nor that they became parties to the stipulation, we cannot prejudge their rights. It would be manifestly improper to do so.

*Judgment for the plaintiff for one dollar.*