HARRY L. ILSLEY, et al., *vs.* JOHN F. KELLEY.

ASA M. SEAVEY *vs.* JOHN F. KELLEY.

York.    Opinion July 24, 1915.

*Check Lines.   Deeds.   Description.   Dividing Line.   Heirs.   Lots.   Plan.*
*Range Line.   Seizin.   Survey.   Title.   Trespass Quare Clausum.*

1.  It is firmly established in this State that the survey must govern when its location can be shown, that where land is conveyed by lot, without further descriptions, that the lot lines determine the boundaries of that lot when they can be located.

2.  It is the well known practice of proprietors of townships in this State to have them surveyed and laid out in ranges, without a more particular description, and the purchaser is entitled to his lot according to the original survey, if that can be ascertained.

3.  The owners of adjoining lands may agree as to the division line and that agreement be binding upon them and those claiming under them.

4.  This agreement is not necessarily conclusive upon other owners whose lands are bounded by the same division line, but it is competent evidence, when the original monument cannot be found, as tending to prove, not a new boundary or corner, but that the line coincides with the original monument referred to in the deed.

5.  If the owner of a parcel of land, through inadvertence or ignorance of the dividing line, includes a part of an adjoining tract within his enclosure, this does not operate as a disseizin.

On motion by plaintiff in both cases for a new trial.    Motions sustained.    New trials granted.

These are two actions of trespass quare clausum for entering, cutting and removing timber from their land situate in Limington, County of York, described in plaintiff's writs.    Plea in each case is the general issue.    The jury rendered a verdict in each case for the defendant, and the plaintiffs filed a motion for a new trial.

The cases are stated in the opinion.

*Elias Smith, and Cleaves, Waterhouse & Emery,* for plaintiffs.

*Allen & Willard, and J. Merrill Lord,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

HALEY, J. Two actions of trespass quare clausum fregit for cutting and removing timber from a lot in Range D, in the town of Limington. The cases were tried together, the verdicts were for the defendant, and are before this court on motions to set aside the verdicts as against law and evidence.

The cutting and removing of the timber was admitted and sought to be justified by denying that the title to the locus was in the plaintiffs, and by the claim that it was in the heirs of Luther Dole. The record shows that in 1855 there was conveyed to Luther Dole, "the northerly half of lot No. 14, D. Range, containing fifty acres more or less;" that he continued to occupy the land until his death, February 17, 1892; that at the time of the acts complained of some of his heirs had conveyed their interest in the lot to the remaining heirs, who were in possession of the northerly half of lot 14; sold the timber

upon the locus in dispute, and authorized the acts complained of, and who defend these actions, claiming the cutting was upon the northerly half of lot 14, inherited by the heirs of Luther Dole.

Luther Dole's title came from the heirs of Henry Dole by four deeds, each of which described the land as "the northerly half of lot No. 14, Range D, containing 50 acres more or less." Henry Dole obtained title to the property conveyed by his heirs, by warranty deed of Daniel Hodgdon to Henry Dole and Hosea Clark, February 9, 1829, and Hosea Clark to Henry Dole November 12, 1839, in which deeds the land was described as "one half of lot No. 14 on D Range, it being the northerly half of said lot, containing about 50 acres." Daniel Hodgdon obtained title to the premises by warranty deed of Joseph Hodgdon October 20, 1828, the premises being described as, "it being one half of lot No. 14 on D. Range, it being the northerly half of said lot, containing fifty acres except a small piece which I sold to Thomas Beal." Some of the other deeds reserve from the conveyance the piece of land sold to Thomas Beal. There is nothing in the record showing where the Beal land was located, but the plan drawn by the surveyor appointed by the court shows that a small parcel in the northerly corner of the northerly half of lot 14 was apparently taken from that lot, but the evidence does not refer to it, except in the deeds as above, and its location is not material in these cases.

From the above statement of title it is apparent that Luther Dole at his death owned the northerly half of lot 14, Range D, and his predecessors in title had owned the same premises by deed so describing it at least from October, 1828.

The record shows that the plaintiffs in the two actions owned that part of lot 15, Range D, adjoining lot 14 as called in the case the "Dole land," tracing their title back to deed of Robert Cole to Washington Ilsley, December 2, 1856, which deed and all other deeds of the premises, including the deed under which the plaintiffs claim, bound the plaintiffs by land of Luther Dole.

At the trial the original survey or plan was not introduced, but a plan of lots 14, 15 and 16, Range D, made by a surveyor appointed by the court to survey the premises and make a plan of them, was used. The accompanying sketch of the plan shows the claims of the parties.

There is no dispute as to the range lines. It is claimed by the plaintiffs that the dividing line between lot 14, which is owned by the Dole heirs, and lot 15, the northerly part of which is owned by the plaintiffs, is a straight line as shown by the line from the post in the range line on the sand hill to a stone bound, half way across the range, extending further to a stake on the range line in the swamp. The defendant claims the dividing line runs from the stone post in the range line to a stake half way across the range, as shown by the dotted line. Between these two lines is the disputed lot upon which the cutting was done, containing about six acres.

It is objected by the defendant that in the writ of Ilsley, et al., the plaintiff's title in that portion of the northerly part of the disputed lot was obtained by a deed given in pursuance of a decree in a bill in equity brought to reform a deed given by Washington Ilsley in his lifetime to John Purington, and that the Luther Dole heirs were not parties to the suit, and ought not to be bound by it.

The objection is without merit. The defendant, or the Dole heirs or their predecessors in title, were not necessary or proper parties to the bill in equity, and the decree or deed does not include any land owned by the defendant or Dole heirs, or Luther Dole, their predecessor in title, but corrects a mistake in a deed in which neither the defendant nor the Dole heirs or their predecessor in title were parties, so that the plaintiffs have title to land in Range D, lot 15, that adjoins the Dole land in lot 14, and if the disputed lot was owned by Luther Dole no title to it passed to the plaintiffs by the deed, and if the disputed lot was not owned by Luther Dole, then of course they were not injured by the decree. The only question in the case was the location of the division or check line between lots 14 and 15, because Luther Dole owned the northerly half of lot 14, and the plaintiffs' title is of that part of lot 15 which adjoins the land owned by Luther Dole in his lifetime.

The defendant did not prove the location of lot 14 by plan or admitted monuments upon the lot, or by measurements from admitted boundaries of other lots in Range D, but claimed that the plaintiffs had not proved, as they should have done to entitle them to a verdict, that the disputed territory was in lot 15.

The record titles of the plaintiffs and the Dole heirs show that the check line between lots 14 and 15 is the dividing line between their lands, and the burden was upon the plaintiffs to prove the original

location of that line for the line run at the time the range and lots were originally located for the boundaries, are still the boundaries if their location can be found.

It is firmly established in this State that the survey must govern when its location can be shown, that when land is conveyed by lot without further descriptions, that the lot lines determine the boundaries of that lot when they can be located. *Bean* v. *Bachelder*, 78 Maine, 184; *Stetson* v. *Adams*, 91 Maine, 178; *Coleman* v. *Lord*, 96 Maine, 192.

"It is the well known practice of proprietors of townships in this State, to have them surveyed and laid out in ranges and lots, causing both to be numbered in regular sequence. They then sell by the number of the lot and the range, without a more particular description. And the purchaser is entitled to his lot according to its actual location, as made by the survey, if that can be ascertained. . . . Selling, as the proprietors do, by the number of the lot and of the range, the range and lot lines are referred to as monuments." *Warren* v. *Pierce*, 6 Maine, 9.

The southerly half of lot 14 was conveyed to Jeremiah Gilpatric by warranty deed dated February 23, 1810, by Daniel Hodgdon, who was the owner of lot 14, and who conveyed the northerly half of the lot February 8, 1829, to the Dole heirs predecessors in title. The two deeds by Daniel Hodgdon show that lot 14 contained 100 acres, and that the range and check or division lines across the range were the boundaries.

The plaintiffs claim to have proved the location of the check line by monuments testified to, and admitted by adjoining owners. John Gilpatric, who was eighty-six years old at the time of his deposition, and whose father owned the southerly half of lot 14, having inherited it from his father Jeremiah, who purchased it from Daniel Hodgdon in 1810, remembers the corners between the Gilpatric and Dole land for seventy years at least, and testified that the stone bound in the middle of the range was the boundary between the Dole lot and the Gilpatric lot on the check line between lots 14 and 15. He also remembers a stake in the swamp where the evidence shows that a stake now stands, as the corners of lots 14 and 15, and also a pine tree as a monument on the sand hill at the opposite side of the range where there is now a post, and remembers the stone bound between the Dole and Gilpatric land upon the check line for many years. The father of John Gilpatric conveyed the southerly half

of lot 14 in 1883 to James W. Foss, who now owns it. He was a witness for the defendant, and testified that the stone bound in the middle of the range was his corner, but did not think the stake in the swamp was the other corner, but by running the line from the stone bound to the range line in the swamp it is shown he was mistaken.

In October, 1888, Asa Libby, the then owner of the southwest one-quarter of lot 15 now owned by Chadbourne, showed the stone bound in the middle of the range as the corner of his land, (the Gilpatric land), and the corner of the plaintiff Seavey's land, then owned by Robinson, and the Dole land; and Mr. Robinson, who owned the plaintiff Seavey's land for twenty-one years, was shown the stone monument by his predecessor in title, and when he sold it in 1888 to Edgecomb, pointed out the stone bound in the middle of the range as the corner stone between the Gilpatric or Foss lots in lot 14 and the Dole lots in lot 14, the Libby and Chadbourne lot in lot 15 and the plaintiff Seavey's lot in lot 15.

Fourteen years before the trial the Libby lot was purchased by Chadbourne and a stake in the swamp afterwards replaced by a new stake in the same place by Mr. Chadbourne, and the stone bound in the middle of the range, which plaintiffs claim are on the check line, were pointed out to him as the line between lots 14 and 15, and his deed refers to them as the bounds, but Mr. Libby, who it is claimed pointed them out, does not remember that he pointed out the stake in the swamp, but he does not deny it. Several other witnesses identify the stone bound in the middle of the range and stake in the swamp as admitted corners between lots 14 and 15. Some thirty five years before the trial, there being a dispute as to some of the division lines upon the lots, the county commissioners were called upon and went on the premises to establish the lines, and the place where the stone monument stands in the middle of the range was apparently, by agreement, used as the check line between lots 14 and 15.

The defendant admitted at the trial that the stone bound in the middle of the range was upon the check line, as claimed by Mr. Foss the then owner, who testified that the stone represented the boundary of his land, as did all other witnesses, who testified to the corners of the lands in lots 14 and 15 one-half across the range where four different lots had cornered for so long that no one remembered when the bounds were first upon the land. During the examination of a

witness as to the claim made on the lot by Mr. Foss while the owner of the south half of lot 14 adjoining the Dole land, counsel for defendant stated that "the James W. Foss land is not now and has not been in controversy so far as we know."

The owners of adjoining lands may agree as to the division line and that agreement be binding upon them and those claiming under them, but it is not necessarily conclusive upon other owners whose lands are bounded by the same division line, but it is competent evidence, when the original monument cannot be found, as tending to prove, not a new boundary or corner, but that the line coincides with the original monument referred to in the deed. *Gilbert* v. *Curtis*, 37 Maine, 45; *Gove* v. *Richardson*, 4 Maine, 327; *Loring* v. *Norton*, 8 Maine, 61.

As the range lines are not in dispute, if any part of the check line is proved, from that point a line in a straight and most direct course to the range line will be the check line between the lots, *Melcher* v. *Merryman*, 41 Maine, 601, and a straight line so run from the stone bound in the middle of the range to the southerly range line runs to the stake in the swamp and a line from the stone bound in the middle of the range to the northerly range line runs to the stake and stone on the sand hill and shows the line from range line to range line, as claimed by the plaintiffs, and locates all of the disputed tract in that part of lot 15 owned by the plaintiffs.

It is clearly proved that for at least seventy years the monuments now claimed by the plaintiffs, the stake in the swamp and a stone at the corner of the Gilpatric and Dole lands, or others in the same place destroyed by time, have been recognized as the true monuments by all the adjoining owners between lots 14 and 15 extending one-half way at least across the range, which with the admission that the Foss (Gilpatric) corner is as claimed by the plaintiffs, and no evidence that before the seventy years there was ever any dispute as to the line, and the fact that the Dole lot was conveyed as one-half of lot 14 and the line as claimed by the plaintiffs, gives to the Dole lot one-half of the lot, and to accept the defendant's claim, would give to the Dole lot six acres more than the Gilpatric lot, which was conveyed as one-half of the lot, and the fact that the line as shown by the monuments claimed by the plaintiffs runs in a straight course across the range, and the lines as claimed by the defendant makes a jog of 176 feet, and makes the lot conveyed as one-half of lot 15 contain six acres less than

the other part of lot 15, which was conveyed as one-half of the lot, raises a presumption that the line as shown by the monuments claimed by the plaintiffs was the line originally run between the lots sufficient, unless controverted by evidence, to prove the plaintiff's title to the disputed lot.

The defendant claims that the check line between lots 15 and 14 begins at a stone on the north range line 176 feet distant from the post on the sand hill, as claimed by the plaintiffs, and extends half way across the range to a stone post 176 feet from the stone bound claimed by the plaintiffs as on the check line at the corner of the Foss (Gilpatric) and Dole lands, but neither of the corners as claimed by the defendant are admitted by the adjoining owners, past or present, as the corners, and no measurements can be made from admitted corners of lots in 14, 15 or 16 that will even tend to show the lines as claimed by the defendant is the check line between lots 14 and 15, but upon the contrary every measurement from admitted lines and corners in the three lots place the check line between lots 14 and 15 as the line claimed by the plaintiffs that crosses the range from the post on the sand hill by the stone monument known as the Gilpatric corner to the stake in the swamp.

The fact that at some time Luther Dole fenced across the lot in dispute, as shown by the remains of an old fence, does not prove the title was in him. His line was a straight line across the range, and the plan shows that the old fence was not on any line, but was a crooked fence and did not enclose all of the disputed lot, and the evidence clearly shows that it was a fence built to keep the cattle from the swamp and rye field for the convenience of the owners of the cattle, and not under a claim of ownership. There is evidence that Luther Dole claimed to own to the fence, but evidence of a deceased owner making claims of title is not evidence of title, in such cases as these, unless he was upon the land pointing out the monuments at the time of the declaration. There is evidence that he did point out the corners of the fence as the corners of his land; it is testified to by men who helped build the fence and also in the deposition of two of his heirs (sons), but no witness testified he ever claimed to own the land except as a part of lot 14. That Luther Dole never claimed to own any part of lot 15 is the only conclusion that can be drawn from the testimony. Two of his sons, whose depositions have been referred to, testified that he said the corners now claimed by the defendant

were the corners of his land, but that the sons understood him to refer to the corners of the northerly one-half of lot 14 is apparent from their conduct, for, after his death in 1892, they deeded to the other heirs their interest in the land and described it as the northerly one-half of lot 14 range D, and the heirs who defend these cases offer as evidence of their title to the disputed lot deeds in which all the heirs of Luther Dole are grantors or grantees describing the land claimed by them as the northerly one-half of lot 14.

The language of the court in *Brown* v. *Gay,* 3 Maine, 128, by changing the word "he" to plaintiffs and number "3" to "14" would exactly fit this case, where the court says, "He is the owner of number 3, and he claims and defends the premises in dispute as a part of that lot. If they are no part of that lot, his claim is plainly founded in mistake. If the owner of a parcel of land, through inadvertence or ignorance of the dividing line, includes a part of an adjoining tract within his enclosure, this does not operate a disseizin."

To allow the defendant's claim to include a part of lot 15 as in a deed of a part of lot 14, would, as held in *Robinson* v. *Miller,* 37 Maine, 312, "be to contradict or vary the plain and unambiguous stipulations of his deed, and to enlarge his grant in a manner unauthorized by law."

That the check line as claimed by the plaintiffs is the true line is proved by applying the rule stated in *Warren* v. *Pierce,* 6 Maine, 11, as follows: "The burden of proof is doubtless upon the plaintiffs to make out their case; but when they show the range lines between which their lot is bounded, and the side lines of the lot next below and next above theirs in number, they have located their lot, and made out their case; if it be not successfully controverted by opposing testimony." There is no dispute as to the range lines and the check line between lots 14 and 15 is the issue, and as lots 14 and 15 were originally conveyed as each containing 100 acres more or less, they being adjoining lots, by calling them one lot, and locating the check line between lots 13 and 14, and lots 15 and 16, the land in both lots will be shown as one lot; which, divided by a line, extending through the middle across the range, will locate the check line between lots 14 and 15, and each lot will share, as it should, the surplus acreage. *Whitten* v. *Hanson,* 35 Maine, 435.

The check line between lots 13 and 14 is not disputed, but claimed by all parties to be as shown upon the plan. The check line between

lots 15 and 16 is not disputed, and is admitted by the abutting owners to be as shown upon the plan, and ancient monuments upon the land show the line to be as admitted. The territory between these two lines is lots 14 and 15, and if that territory is divided in the middle by a line across the range, the line will run from the stake in the swamp by the stone bound known as the Gilpatric corner to the stake and stones on the sand hill, on the line as claimed by the plaintiffs, and locates all the disputed lot in that part of lot 15 owned by the plaintiffs, and gives to each lot 112.2 acres, while according to the plan and survey the check line as claimed by the plaintiffs lot 14 contains 112.8 acres, and lot 15, 111.9 acres. The difference of nine-tenths of an acre on a lot more than 3000 feet in length is so trifling in this case, where the land is wild and swampy, that it is immaterial, and that surplus is in lot 14 and therefore the defendant cannot complain.

By each of these two methods the plaintiffs have proved that the disputed lot is located in lot 15, that the title to it is in the plaintiffs, and the defendant has not by evidence successfully controverted their claim of title, and the record does not show evidence that authorized the jury to find that the title was in the Dole heirs, who defend the actions.

*Motions sustained.*
*New trials granted.*