CLARA E. McCAUSLAND *vs.* NETTIE B. YORK.

Cumberland.      Opinion, August 11, 1934.

116

*Verrill, Hale, Booth & Ives,* for plaintiff.
*Frederic J. Laughlin,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J. This is an action of trespass quare clausum fregit to which the defendant pleads the general issue and, in a brief statement, alleges that she is lawfully seized and possessed of the land described in the plaintiff's writ on which the acts of trespass are alleged to have been committed. The suit was duly entered in the

Superior Court and referred under rule of court with the right of exceptions to decisions of law reserved. The Referees found for the plaintiff and assessed damages. The defendant filed written objections and perfected her exceptions to the acceptance of the report. The writ, pleadings, evidence, and report of the Referees, together with the objections filed in the trial court, are made a part of the bill of exceptions.

The land in controversy is a small parcel lying between the homestead lots owned and occupied by the parties, and all situated on the northerly side of Clifton Street near its intersection with Forest Avenue in the City of Portland. This tier of three lots is a part of a tract of land which was formerly owned by Arthur E. Marks, now deceased. He is the common grantor from whom the predecessors in title of these parties derived their titles.

By his deed dated September 19, 1894, Arthur E. Marks conveyed the northeasterly end of this tract with the buildings thereon to Herbert W. McCausland, the plaintiff's husband. This deed was duly recorded on October 8, 1894, in the Cumberland Registry of Deeds and the grantor and his successors in title, including the plaintiff, have since continuously occupied the premises.

About two years later, Arthur E. Marks sold the southwesterly lot in his tract on Clifton Street to Fannie E. Hopkinson. The deed then given was dated March 27, 1896, acknowledged March 28, 1896, and recorded April 4, 1896. It contained the following description:

"A certain lot or parcel of land with the buildings thereon, situated in said Deering, and bounded and described as follows, to wit: Beginning at the South-Westerly corner of Clifton Street at the point of intersection of said Clifton Street with Forest Avenue; thence Northerly on the Westerly side line of said Clifton Street eighty-nine (89) feet to a stake; thence North Westerly at nearly right angles with said Clifton Street and along the Southerly side-line of land deeded to H. W. McCausland forty-seven (47) feet to an iron rod located on the South Easterly side-line of land of L. W. Whitney; thence Southerly on the South Easterly side-line of said Whitney's land eighty-nine (89) feet more or less to the

Northerly side-line of Forest Avenue; thence South-Easterly on the Northerly side-line of said Forest Avenue forty-seven (47) feet to the point of beginning."

Fannie E. Hopkinson, the grantee in this deed, died September 24, 1913, and this property descended to her sister, Elizabeth H. Marks, who conveyed it by substantially identical metes and bounds to the defendant, Nettie B. York, by deed dated July 8, 1914, and recorded on the following day. On the strength of this chain of title, the defendant claims that her land extends northeasterly from Forest Avenue to the land which Arthur E. Marks conveyed to Herbert W. McCausland by deed dated September 19, 1894, to which reference has already been made. If this claim can be sustained, the defendant has title to the land upon which the trespass is alleged to have been committed.

It appears and is undisputed, however, that by deed dated March 26, 1896 and acknowledged March 28, 1896, but not recorded until June 27, 1927, Arthur E. Marks purported to convey to Herbert W. McCausland a small practically triangular lot of land abutting on Clifton Street and lying on the southwesterly side and adjoining the land and buildings which he had previously conveyed to McCausland by deed of September 19, 1894. The evidence tends to prove that, although McCausland, the grantee, did not then record this deed, he immediately went into possession of the lot therein described, graded it and made it a part of his lawn, and until his death used and occupied it as a part of his homestead lot. His wife, the plaintiff in this action, his successor in title as life tenant under his will, has been in possession since his death. A part or all of this lot is included in the land claimed by the defendant, and her entry, excavation, and spoliation of the growing grass on it is the basis of this action.

For nearly thirty years after Arthur E. Marks conveyed these lots on Clifton Street, there appears to have been no controversy as to the ownership of the triangular intermediate lot. The Hopkinson land, now the York land, being higher was graded down in an embankment which ran, if not exactly nevertheless practically, to the southwesterly line of the triangle, as for convenience the lot in dispute may be called. This embankment was already built when

the Yorks purchased this property and was used as a part of their back lawn just as it had been used, it may be fairly inferred, by Fannie E. Hopkinson in her lifetime. The McCauslands, on the other hand, occupied the triangle as part of their lot. They mowed to the foot of the embankment where Hopkinson and the Yorks stopped mowing, and the adjoining owners treated the foot of the embankment as the approximate location of this dividing line. Neither here presents a claim of adverse possession. Although that question is not raised here, it well may be that both parties intended to occupy and claim title to their true line wherever that might be ascertained to be, and find themselves within the doctrine of *Preble* v. *Railroad Company*, 85 Me., 260, 27 A., 149, and the later decisions of this Court.

In 1927 or the year following, a surveyor, employed by the defendant York to run her lines, apparently advised her that she owned the triangle, made a plan of it and the adjoining lots, and set stakes in accordance with his interpretation of the deeds and their legal effect. Acting on this advice, the defendant York started to build a garage on the triangle but stopped the work. She dug a trench practically across the lot and set posts for a fence, and from time to time mowed the grass and otherwise attempted to use and occupy it as owner. Finally, alleging that the deed of Arthur E. Marks to Herbert W. McCausland bearing date of March 26, 1896, which purported to transfer the title to the triangle, constituted a cloud on her title to the triangle, she brought a bill in equity to remove the cloud. The bill was dismissed without prejudice, this Court on appeal holding that equity had no jurisdiction, the proceeding on pleading and proof being nothing more than an attempt to settle a line dispute and try title, a matter which was cognizable in the courts of law. *York* v. *McCausland*, 130 Me., 245, 154 A., 780. In this action at law, the parties are reversed but the controversy is the same. Both parties claim the legal title to the triangle, so-called, under their respective deeds and base their right of possession thereon. The issue in trespass quare clausum fregit is rightful possession. *Kimball* v. *Hilton*, 92 Me., 214, 42 A., 394. If the plaintiff establishes a legal title to the triangle, in the absence of proof of actual adverse possession by someone else, which is lacking here, the law implies that she had constructive possession

sufficient to maintain this action. *Thurston* v. *McMillan*, 108 Me., 67, 78 A., 1122; *Butler* v. *Taylor*, 86 Me., 17, 29 A., 923; *Griffin* v. *Creppin*, 60 Me., 270. If the defendant has the title, the plaintiff can not maintain her action.

The deed by which Arthur E. Marks attempted to convey the triangle in dispute to Herbert W. McCausland, from whom the plaintiff derives her title as life tenant, was a warranty deed and, as already pointed out, although dated March 26, 1896, was not acknowledged until March 28, 1896. There being no convincing evidence outside the deed itself as to when it was delivered, the date of the acknowledgment must be taken as the date of delivery. In the absence of controlling evidence to the contrary, when a deed is acknowledged at a date later than the instrument itself bears, the presumption is that delivery was upon the date of acknowledgment. *Loomis* v. *Pingree*, 43 Me., 299; *Mighill* v. *Rowley*, 224 Mass., 586, 113 N. E., 569.

On the record, therefore, on March 28, 1896, Herbert W. McCausland received delivery of and accepted a deed apparently conveying the title to the disputed premises. Although the deed was not then recorded, as between the grantee and the grantor, his heirs and devisees and persons having actual notice thereof, this transfer of title was complete and effectual. It was not effectual as against a prior recorded conveyance of the same property. The Recording Act of this State in force when the rights of these parties accrued provided: "No conveyance of an estate in fee simple, fee tail or for life or less, for more than seven years is effectual against any person except the grantor, his heirs and devisees and persons having actual notice thereof, unless the deed is recorded as herein provided." R. S. 1883, Chap. 73, Sec. 8; R. S. 1903, Chap. 75, Sec. 11. The statute has reference, however, only to conveyances of the same property. *Hooper* v. *Leavitt*, 109 Me., 70, 82 A., 547. Unless it here appears that the parties and their predecessors in title both received deeds purporting to convey the same disputed triangle, the defendant obtains no priority merely because the McCausland deed was withheld from the record. There is no doubt that the deed of Arthur E. Marks to Herbert W. McCausland, which bore date as of March 26, 1896, embraced and purported to convey the triangle. The real question in the case is

whether the deed of Arthur E. Marks to Fannie E. Hopkinson dated March 27, 1896, which has already been discussed, included this disputed lot. The defendant's title, in so far as this controversy is concerned, is measured by that originally acquired by Fannie E. Hopkinson. It has been in no way enlarged by subsequent inheritance or conveyance. The widening of Forest Avenue has reduced the length of the lot as will hereinafter appear in another connection, but it has not changed its northeasterly bound.

The defendant, relying on the description given in the Hopkinson deed, contends that the northeasterly bound of her land is the southeasterly bound of the first lot with the buildings thereon which Arthur E. Marks conveyed to Herbert W. McCausland on September 19, 1894. The second call in that deed reads: "Thence North Westerly at nearly right angles with said Clifton Street *and along the Southerly side-line of land deeded to H. W. McCausland* forty-seven (47) feet to an iron rod located in the South-Easterly side-line of land of L. W. Whitney." The Referees ruled against the defendant on this issue. They note that the McCausland deed of the triangle bears date of March 26, 1896, the day before the Hopkinson deed is dated, and that both deeds were acknowledged on March 28, 1896. From this, they draw the inference and find that these deeds were delivered on the day of their acknowledgment and, both being acknowledged on the same day, the McCausland deed was delivered before Fannie E. Hopkinson received her deed. We are of opinion that the Referees were fully warranted in this conclusion. It is the accepted rule that when two deeds purport to have been acknowledged on the same day "we may well presume, notwithstanding the form of words as to the attestation, that the deeds were in fact delivered on the day they were acknowledged, and in such order of time as to make them effectual to carry out the intentions of the parties to them." *Loomis* v. *Pingree*, supra. Here was a common owner delivering deeds of adjoining lots of land to different grantees on the same day. It must be presumed that he was acquainted with the contents of his deeds, mindful of his former conveyances from the same tract, and honest in his intentions. There can be no doubt that he intended to convey the triangle to Herbert W. McCausland and it can not be assumed that he intended to perpetrate a fraud by including the same property in his con-

veyance to Fannie E. Hopkinson. We also feel justified, as did the Referees, in attributing honorable intentions to the grantees who accepted the deeds. Their subsequent use and occupation of the two lots indicate a mutual intent to hold their lands as the grantor intended to convey them. The presumption of the delivery of the McCausland deed to the triangle before the Hopkinson deed was given is in accord with the apparent intentions of the parties.

The triangle, therefore, seems to have been "land deeded H. W. McCausland" when the Hopkinson deed was given. The acceptance of its "Southerly side-line" as the northeasterly bound of the defendant's land is consistent with the other metes and bounds given in the deed. The "Southerly side-line" of McCausland's first lot is entirely inconsistent with those calls. Running "Northerly on the Westerly side-line of said Clifton Street eighty-nine (89) feet to a stake", the line of the Hopkinson lot turns and runs *"thence North Westerly at nearly right angles with said Clifton Street* and along the Southerly side-line of land deeded to H. W. McCausland *forty-seven* (47) *feet to an iron rod located on the South-Easterly side-line of land of L. W. Whitney."* The iron rod referred to in this description, according to the record, still exists and its location is not in dispute. The "Southerly side-line" of the triangle turns "nearly at right angles with Clifton Street," and runs in a straight line to the iron rod, the distance being approximately forty-seven feet. The "Southerly side-line" of the first lot conveyed to McCausland does not turn even approximately at right angles with Clifton Street, nor would a line run from the southwest corner of that lot at such an angle reach the iron rod or strike the south-westerly side-line of the Whitney land. These significant facts carried weight to the minds of the Referees and confirmed their conclusion that, according to the description in the Hopkinson deed, the defendant's land ran to the "Southerly side-line" of the triangle.

The defendant lays much stress on the fact that, when and since she acquired her title to the Hopkinson lot, so-called, it has never had a depth of eighty-nine feet from Forest Avenue running north-easterly on Clifton Street as stated in the first call of her deed and in the original conveyance to Fannie E. Hopkinson. This is un-doubtedly true, but it does not give her title to any part of the

triangle which the plaintiff owns. It is not denied that in 1880 the tract of land on Clifton Street acquired by Arthur E. Marks extended one hundred sixty-five feet northeasterly from Forest Avenue, but it appears that, by proceedings begun in 1893 and concluded in 1897, Forest Avenue was widened approximately twenty-four feet, and Fannie E. Hopkinson, who then owned the defendant's lot, was compensated for the land taken therefrom. The defendant acquired title to the Hopkinson lot after and as it had been cut down by the widening of Forest Avenue. This accounts for the deficiency in the frontage on Clifton Street called for in her deed. The length of the defendant's lot does not militate against the finding that the "Southerly side-line" of the triangle marks her northeasterly bound.

The defendant urges in an extended argument that the triangle in dispute can not be deemed the boundary mentioned in the second call of the Hopkinson deed because the deed conveying it to Herbert W. McCausland was not recorded when she and her predecessors in title received their conveyances. She insists that the owners of the Hopkinson lot were entitled to notice that the "land deeded H. W. McCausland" was in fact the triangle. We are not of opinion that the question of actual notice or of constructive notice which might have been obtained through the recording of the McCausland deed affects the defendant's title one way or the other. When one accepts a deed bounding his conveyance by the land of another, the land referred to becomes a controlling monument. *Perkins* v. *Jacobs*, 124 Me., 347, 129 A., 4. This is true whether the deed is or is not recorded. The land referred to as a bound is established as a monument by the deed of the parties and is in no way dependent upon the Recording Act. This rule is definitely settled in the earlier decisions of this Court. We are not unmindful that the facts in those cases are in some ways distinguishable from those in the case at bar, but the principles involved are the same and must be affirmed. *Bryant* v. *Maine Central Railroad Company*, 79 Me., 312, 9 A., 736; *Bonney* v. *Morrill*, 52 Me., 252.

Nor does the defendant take anything by the fact that one of the calls in the deed of the triangle to Herbert W. McCausland was erroneous. It is true that the first call is wrong. Its recital is, "Beginning at a point on the South-Easterly corner of land of said

McCausland on the North-Westerly side-line of Clifton Street," etc. The reference should have been to the "*Southwesterly* corner." With this correction of an obvious error, the calls in the deed are made consistent with each other and the description perfect. It is an established rule of construction that, if it can be ascertained from such parts of the description in a deed as are found correct what was intended to be conveyed, the property will pass and the incorrect parts of the description will be merely rejected and disregarded. *Richardson* v. *Watts*, 94 Me., 476, 484, 48 A., 180; *Abbott* v. *Abbott*, 53 Me., 356, 361.

What are the boundaries of land conveyed by a deed is a question of law. Where the boundaries are is a question of fact. An existing line of an adjoining tract may as well be a monument as any other object. And the identity of a monument found upon the ground with one referred to in the deed is always a question for the triers of fact. *Abbott* v. *Abbott*, 51 Me., 575; *Murray* v. *Munsey*, 120 Me., 148, 150, 113 A, 36; *Perkins* v. *Jacobs*, supra. In references of cases by rule of court under Rule XLII of the Supreme and Superior Courts, a finding of fact by a Referee supported by any evidence of probative value, and his decision thereon, if sound in law, is not exceptionable. *Jordan* v. *Hilbert*, 131 Me., 56, 158 A., 853. The finding of fact by the Referees in the case at bar that the "Southerly side-line" of the triangle conveyed to Herbert McCausland by deed dated March 26, 1896, was the northeasterly boundary of the defendant's lot at the corner of Clifton Street and Forest Avenue in Portland, and the ruling that the plaintiff holds the legal title to the triangle as life tenant under her husband's will, were fully warranted. The numerous requests for rulings submitted to the Referees were granted or sufficiently otherwise covered in the Report. The exceptions based on the objections filed in the Trial Court can not be sustained and must be overruled.

*Exceptions overruled.*