Charlotte LIEBLER

v.

**Arnold ABBOTT and Ora Mae Abbott.**

Supreme Judicial Court of Maine.

July 19, 1978.

Sanborn, Moreshead, Schade & Dawson by Peter T. Dawson (orally), Augusta, for plaintiff.

Blake & Hazard by Paul L. Hazard (orally), Belfast, for defendants.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

Once again we are faced with a decision concerning property located on "the Neck" on Lake St. George in Liberty, Maine. *See Benner v. Sherman*, Me., 371. A.2d 420 (1977). The instant case involves the locus of the line separating plaintiff's cottage lot from that of the defendants. A referee determined after extensive hearing that the locus of this line was that advocated by the defendants. This decision placed the dis-

puted line some ten (10) feet easterly of the defendants' cottage rather than, as the plaintiff argued, some ten (10) feet farther westerly which would cause the line to pass through at least a portion of the defendants' cottage.

The plaintiff instituted this real action for the purpose of establishing the locus of this line, to which the defendants, after denying plaintiff's allegations, filed a counterclaim to establish their own line. The matter was referred, resulting in a recommendation that, on the plaintiff's complaint, judgment be for the defendants and, on the counterclaim, judgment be for the defendants. After an unexplained delay of some fifteen months, the report of the referee was accepted and judgments ordered accordingly, from which an appeal to this Court was seasonably taken.

We deny the appeal.

## FACTS

The plaintiff traced her title to a deed from Luther H. Sherman to one Lois C. Glidden, dated February 7, 1958, and recorded April 10, 1958.[1] This deed conveyed "Lot # 11 as shown on a Plan of Cottage Lots on St. George Lake of Luther H. Sherman as surveyed by James H. Duncan under date of September 6, 1955." On this plan Lot # 11 adjoins Lot # 10 on the east, which dividing line is described in plaintiff's deed as follows:

> "Beginning on the Northerly shore of St. George Lake at the Southeast corner of Lot # 10 as shown on said Plan; thence North 22° West 100 feet to the Southerly bound of a private way leading past said Cottage Lots."

On July 7, 1958, Luther H. Sherman conveyed Lot # 10 to the defendants, again by reference to the same plan as that referred to in the plaintiff's chain of title. The dividing line between Lots # 10 and # 11, after arriving at the northwest corner of Lot # 11, was described as follows,

> "thence turning and running southerly 22° east 100 feet, more or less, to the shore of St. George Lake."

The referee heard disputed testimony relating to the geographical locus of the "northwest corner of Lot # 11," which, of course, is the northeast corner of Lot # 10. The plaintiff offered evidence hoping to prove that the starting point of the plan, namely, the northwest corner of Lot # 1, could be located by reference to an ancient stone wall. On the other hand, the defendants offered testimony that this starting point was marked by an "iron bolt" set in the ground. The recorded plan then depicts the rear line of the various lots running easterly from # 1 through # 11 as being a specific footage for each lot[2] along the right of way road which abutted the rear of all of the lots. If these measurements were made starting at the "iron bolt," the defendants' contention of the physical locus of their northeast corner is sustained. On the other hand, if the plaintiff's method of measurement is followed, one would arrive at a point somewhat westerly of where the defendants contend the corner is located.

Our review of the record leads us to the conclusion that it became a question of fact as to where the starting point of the plan was and that the referee had credible evidence on which to premise his ultimate conclusion.

## I

■ We are again faced with the familiar legalism that

> "What are the boundaries is a question of law, and where the boundaries are is a question of fact."

*Rusha v. Little,* Me., 309 A.2d 867, 869 (1973); *Perkins v. Jacobs,* 124 Me. 347, 349, 129 A. 4, 5 (1925).

■ When a deed is accepted which bounds the land conveyed by the land of another, such land so referred to becomes a controlling monument and it is unimportant

1. Lois C. Glidden conveyed this property to the plaintiff by deed dated December 4, 1963, and recorded on December 16, 1963.

2. Lots # 1 through # 9 each have 100' rear lines while Lot # 10 has a rear line of 60'.

whether the deed from which the reference is taken is recorded or not. *McCausland v. York,* 133 Me. 115, 123, 174 A. 383, 387 (1934). Furthermore, if such boundary can be located on the face of the earth, variant distances must yield to such monument. *Hardison v. Jordan,* 141 Me. 429, 432, 44 A.2d 892, 893 (1945). The foregoing principles apply with equal force where land has been conveyed by reference to a survey and in such cases "the lot lines determine the boundaries of that lot when they can be located." *Ilsley v. Kelley,* 113 Me. 497, 501, 94 A. 939, 940 (1915).

"Where lots have been granted, designated by number, according to a plan referred to, which has resulted from an actual survey, the lines and corners made and fixed by that survey are to be respected as determining the extent and bounds of the respective lots."

*Coleman v. Lord,* 96 Me. 192, 194, 52 A. 645, 646 (1902).

If supported by credible evidence, findings of fact may not be disturbed on appeal unless they are found to be clearly erroneous, and the weight to be given disputed evidence, including that of opinion evidence by surveyors, is for the factfinder. *Perkins v. Conary,* Me., 295 A.2d 644, 647 (1972).

## II

The application of the foregoing legal principles to the facts of this case forecloses the plaintiff's attack on the defendants' judgment.

■ Plaintiff argues that since her foundation deed predates that of the defendants, defendants' conveyance was subordinate thereto and could not convey a segment off the west side of Lot # 11 even if such was the intention of defendants' grantor. This argument is not persuasive. The dividing line was that which was established by the 1955 plan and survey and the locus of that line became controlling without regard to when deeds were delivered or recorded. *Ilsley v. Kelley, supra.*

Appellant next contends that since her deed was first in time, the defendants' easterly boundary was then fixed by the appellant's westerly boundary. However, this argument ignores the fact that the disputed boundary was fixed by the plan and the language in both deeds is identical, even though bearing in one deed runs "south 22° east," whereas, the other is merely the reverse thereof, namely, "north 22° west." The plan made following the 1955 survey is entirely consistent therewith and depicts the line as following this bearing. *See Coleman v. Lord,* 96 Me. at 195–96, 52 A. at 646.

■ The appellant's final position can be summed up as asserting that the referee was clearly erroneous when he failed to use the ancient stone wall[3] as a foundation for locating the northwest corner of Lot # 1. Since there was credible evidence to support the referee in adopting the locus of this corner as being an iron bolt, such becomes conclusive. It was a pure question of fact.

## CONCLUSION

The Justice of the Superior Court was correct when he concluded that the referee followed established principles of law in reaching his conclusion. The easterly line of Lot # 10 (or the westerly line of Lot # 11), as a matter of law, is the dividing line between the property of the plaintiff and the defendants. The referee placed this line on the face of the earth by adherence to credible evidence in the record. There was no error in the judgment.

The entry is:

Appeal denied.

Judgment affirmed.

DUFRESNE, C. J., and WERNICK, DELAHANTY and GODFREY, JJ., concur.

POMEROY, J., did not participate.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

---

**3.** This monument, which had been subsequently removed, was used as a bound in a 1948

deed to one Carol C. Banks and, of course, predated the recorded plan.