MARY H. WHITMORE

vs.

SYLVESTER B. BROWN AND PEDRICK D. GILLEY.

HELON SMALLIDGE, ANNIE E. LINDSEY AND AVELIA HOLMES

vs.

SAME.

Hancock.    Opinion October 3, 1905.

*Navigable Waters.   Owners of Upland.   Riparian Rights.   Flats.   Grant of Upland.
Public Lands.   Grant.   Construction.   Description.   Deed.   "Appurtenances
and Privileges."   Adverse Possession.   Colonial Ordinance, 1641-7.*

1.  By force of the Colonial Ordinance of Massachusetts, 1641-7, the owner
    of upland adjoining tidewater prima facie owns to low water mark ; and
    does so own, in fact, unless the presumption is rebutted by proof to the
    contrary.

2.  Flats pass by a grant of the upland, unless excluded by the terms of the
    grant properly construed.

3.  In construing a grant, the intention of the parties is ascertained by giv-
    ing suitable effect to all the words of the grant, reading them in the light
    of the circumstances attending the transaction ; but the supposed inten-
    tion of the parties, however fortified by circumstances, cannot be permit-
    ted to overcome the effect of the express language of the grant, taken as a
    whole, and properly construed.

4.  The expression in a grant, "to the shore, then the shore round to the
    first mentioned bounds," or "then follows the shore to the bound first
    mentioned," is interpreted as meaning "to the shore and then by the
    shore" to the point of beginning, and this expression, unqualified,
    excludes the flats.

5.  The expression in a grant, "to the head of a cove, thence around the
    western side of the cove" excludes the cove and the flats.

6.  The description in a deed, "Beginning in the N. E. corner of N. S.'s land
    (which point was in fact at or above high water mark) and proceeding
    thence by several courses" to the head of Gilpatrick's cove, thence around
    the western side of the cove to the first mentioned bounds" excludes the
    flats.

7.  The description in a deed, "Beginning at a spruce tree on the shore
    near the head of Gilpatrick's cove, so called, and running west across the
    point to the shore; thence southeasterly and northwardly running the
    shore to the point of beginning, with all the privileges thereto," excludes
    the flats.

8. When the two ends of a line by the shore are at high water mark, in the absence of other calls or circumstances showing a contrary intention, the boundary will be construed as excluding the shore.

9. The flats do not pass as appurtenant to the upland, when they are outside of the express boundaries in the grant, even if the grant contains the words "together with all the privileges and appurtenances thereto belonging."

10. The evidence in these cases falls far short of proving adverse, exclusive, continuous, open and notorious occupation of the flats for twenty years or more.

On report.   Judgment for defendants.

Two real actions to recover certain tide lands or flats in Gilpatrick's Cove on Mt. Desert Island, adjacent to the parcels of upland owned severally by the plaintiffs.   The defendants pleaded the general issue and disclaimed as to all the demanded premises except that part of the same embraced within the description contained in a deed from Arthur Gilpatrick to the defendants, dated Feb. 1, 1902, and recorded in the Hancock Registry of Deeds, volume 378, page 332.

It was agreed to report the cases to the Law Court with the stipulation "that the Law Court is to determine whether the plaintiffs are entitled to recover in either or both cases covered by this report, and if the court finds from this report of the cases that the plaintiffs are entitled to recover any portion of the premises described in the writs, then the court is to fix the limits of such portion of the premises in either or both cases which plaintiffs are so found entitled to recover."

The case is sufficiently stated in the opinion.

*Hale & Hamlin,* for plaintiffs.

*Arno W. King, George R. Fuller, and John A. Peters,* for defendants.

SITTING:   EMERY, STROUT, SAVAGE, POWERS, PEABODY, JJ.

SAVAGE, J.   These are real actions, and upon the pleadings the question in issue is the ownership of the flats in Gilpatrick's Cove on Mt. Desert Island, adjacent to the parcels of upland owned severally by the plaintiffs.   Both plaintiffs derive their titles from Maria Teresa De Gregoire.   The Island of Mt. Desert, prior to 1788, was owned by John Barnard and Madame De Gregoire, in common and undivided.   By partition proceedings in 1788, the easterly part of

the island was set off to Madame De Gregoire, to hold in severalty. Undoubtedly while Barnard and Madame De Gregoire owned the island in common, their ownership included the flats around it, under the provisions of the Colonial Ordinance of Massachusetts, 1641-7.

It is suggested that the decree of partition set off to Madame De Gregoire the upland only of the easterly part of the island, and excluded the flats. But we think that taking into consideration all of the terms of the partition proceedings, read in the light of existing conditions, the title in severalty to the flats passed to Madame De Gregoire, and the question to be determined is whether that title has come down to the plaintiffs.

In the Colonial Ordinance above referred to, which is a part of the common law of this state, *Barrows* v. *McDermott,* 73 Maine, 441, it is declared "that in all creeks, coves, and other places, about and upon salt water, where the sea ebbs and flows, the proprietor of the land adjoining shall have propriety to the low water mark, where the sea doth not ebb above one hundred rods, and not more wheresoever it ebbs further." By force of this ordinance it is held that the owner of upland adjoining tidewater prima facie owns to low water mark; and does so, in fact, unless the presumption is rebutted by proof to the contrary. *Proctor* v. *Maine Central R. R. Co.,* 96 Maine, 458. The grantor may separate the flats, from the upland, and convey the one and retain the other. *Storer* v. *Freeman,* 6 Mass. 435. But unless the flats are excluded by the terms of the grant properly construed, they pass by a grant of the upland. In construing deeds in which the question arises, as in the construction of all other deeds, the court endeavors to give effect, if possible, to the intention of the parties, but it is and must be the intention which is ascertained by applying the legal rules of construction to the language in the deed. In *Proctor* v. *Maine Central R. R. Co.,* supra, we said: "Ordinarily the intent which is effective in a grant is the intent expressed by the language of the grant. It is the expressed, rather than the unexpressed intent. It is ascertained by giving suitable effect to all the words of the grant, reading them in the light of the circumstances attending the transaction, the situation of the parties, the state of the country, and of the estate granted, such as its

condition and occupation." But the supposed intention of the parties, even if fortified by circumstances and conditions, cannot be permitted to overcome the effect of the express language of the grant, taken as a whole, and properly construed.

The provisions in the deeds in the plaintiffs' chains of title to which we shall refer, will, we think, be better understood by reference to the accompanying sketch.

In many of the older deeds in the cases before us, the boundary line is described as running to James Richardson's line, then following the Richardson line southerly "to the shore," "then the shore round to the first mentioned bounds" or "then follows the shore to the bound first mentioned." These expressions we interpret as meaning "to the shore and then by the shore" to the point of beginning. The words "to the shore" is a phrase of exclusion, *Dunton* v. *Parker*, 97 Maine, 461, and it has always been held that the description "to the shore and then by the shore," unqualified, excludes the shore, which is the flats between high and low water mark. *Proctor* v. *Maine Central R. R. Co.*, 96 Maine, 458. But the expression may be qualified by words or phrases in the deed, as for instance, when both the termini of a boundary by a shore are at its outer margin, the shore will be included, unless other calls and circumstances show a contrary intention, although the line may be described as running "to the shore, and then by the shore." *Dunton* v. *Parker*, supra. Even if one of the termini is at high water mark and the other at low water mark, the shore may be included in the conveyance, as it was in *Snow* v. *Mt. Desert Is. R. E. Co.*, 84 Maine, 14.

But in the deeds referred to, it does not clearly appear where the starting point was, whether at high water mark or low water mark. We prefer therefore to rest our conclusion in the Whitmore case upon the consideration of a single deed in the plaintiff's chain of title, namely that of John Manchester to her grantor, for the plaintiff Whitmore has no greater title than was conveyed by that deed.

*The Whitmore Case.* The boundary in the last named deed is as follows: "Beginning in the N. E. corner of Nathan Smallidge's land; thence running W. on Smallidge's line to the shore at the mouth of Somes's River; thence N. Westerly to a stake south of Thomas Manchester's wharf; thence E. to Samuel Gilpatrick's line; thence south on Gilpatrick's line to the head of Gilpatrick's Cove; thence around the western side of the cove to the first mentioned bounds." The Gilpatrick line spoken of is the same as the Richardson line in the older deeds.

The question is,—Does the line "to the head of Gilpatrick's Cove," end at high water mark? Or does it extend to or toward

low water mark? We think it ends at high water mark. The words "head of the cove," in their natural significance, seem to us to mean that place farthest up the cove where the water stands at high water, and not down the cove at low water mark, a place which in this case is near the mouth of the cove. Moreover the plans in evidence in this case show that the Gilpatrick line, if extended across the flats in the cove, would strike the upland on the westerly side before it would strike low water mark, and then it would be on the outside of the cove. The words "to the head of the cove" exclude the cove and the flats. The next call in the deed strengthens our conclusion. It is, — "thence around the western side of the cove to the first mentioned bounds." It helps to make clear what was in the minds of the parties. If "the western side of the cove" starts at the Gilpatrick line at high water mark, and proceeds along high water mark, the course seems a reasonable, natural and probable one. On the other hand, if the Gilpatrick line be extended southerly across the flats, the next call, "around the western side of the cove," has little or no meaning. There is no place which it fits. It seems very improbable that the parties actually intended the conveyance to cover anything below high water mark. A glance at the sketch is sufficient to show how improbable it is that such a line was intended. There is another ground which also seems to us conclusive that the deed in question did not convey the flats. The description begins "at the N. E. corner of Nathan Smallidge's land," and it ends at "the first mentioned bounds." As we shall show when we consider the Smallidge case, the Smallidge land did not include flats. The northeast corner of the Smallidge land, therefore, was at or above high water mark. So that the description in the Whitmore deed now in question begins at a point at or above high water mark, proceeds by several courses to the head of Gilpatrick's Cove, thence around the western side of the cove, to the point of beginning, which was at or above high water mark. Such a description, in the absence of other calls or circumstances showing a contrary intention, will be construed as excluding the shore. *Parker* v. *Dunton*, 97 Maine, 461. To hold otherwise would be to ignore all the previous decisions of

this court. The plaintiff's grantor therefore obtained no title to the flats by grant, and conveyed none to her.

*The Smallidge Case.* The plaintiffs' lot lies next south of the Whitmore lot just considered, and they have the title which was conveyed to Nathan Smallidge by Wentworth Kenniston, by deed dated December 11, 1839. The description in that deed is as follows:—"Beginning at a spruce tree on the shore near the head of Gilpatrick Cove, so called, on Mt. Desert Island and running west across the point to the shore; thence south Eastly and northwardly running the shore to the point of beginning, with all the privileges thereto." It must be considered that the spruce tree which was "near the head of the cove" and which was both the beginning and the ending of the boundary as expressed, was on upland. And although it may properly be held, under some circumstances, that a tree or other object on the bank of a river or cove, which marks the starting point of a boundary line, is intended rather to mark the course of the line than its precise terminus, at water line, and even that flats beyond may pass, *Erskine* v. *Moulton,* 66 Maine, 280, we do not think such a rule can be applied to the description in this case, so as to carry the starting point to low water mark, particularly since the other calls in the deed exclude the shore. They are, "running west across the point *to the shore;* thence . . . running the shore to the point of beginning." As we have already said, "running the shore" means "running by the shore." These calls exclude the shore. *Proctor* v. *Maine Central R. R.,* supra. And the whole description is brought within the rule that where the two ends of a line by the shore are at high water mark, in the absence of other calls or circumstances showing a contrary intention, the boundary will be construed as excluding the shore. Moreover, a glance at the sketch will show the improbability that the parties intended the northeast corner of the lot to be at low water mark.

It is admitted that in all the deeds the words, "together with all the privileges and appurtenances thereto belonging," are inserted in the habendum clause. And in the Smallidge deed the description of the premises granted is followed by the words "with all the privileges thereto." The plaintiffs claim that the flats are appurtenant to

the upland, and that under such descriptions, or clauses, they passed by a conveyance of the upland. It was suggested in *Snow* v. *Mt. Desert Isl. R. E. Co.*, 84 Maine, 14, that flats are in a sense considered as appurtenant to the upland. But it must be remembered that the effect of the Colonial Ordinance upon the construction of deeds is merely to fix boundaries. A deed of the upland prima facie conveys flats,—not appurtenances nor privileges merely, but the land itself, subject to public uses,—to low water mark. On the other hand, we think it must be held that if by the descriptive terms in the deed, the flats are excluded, they do not pass even as appurtenances or privileges. They are outside the boundaries fixed by the deed. No interest in land in the flats passes which is beyond the dividing line.

The plaintiffs also claim title by disseizin. One may obtain title to flats by adverse possession. If, holding under a recorded deed which includes flats as well as upland, he acquires title to the upland by adverse possession, the title will extend to the flats covered by his deed. *Brackett* v. *Persons Unknown*, 53 Maine, 228. *Richardson* v. *Watts*, 94 Maine, 476. But that is not this case. Here the plaintiffs can hold only by proof of adverse possession of the flats,— and then not beyond the line of actual occupation. *Thornton* v. *Foss*, 26 Maine, 402. The proof is insufficient. The evidence falls far short of proving adverse, exclusive, continuous, open and notorious possession of the flats for twenty years or more.

The entry in each case must be

*Judgment for defendants.*