**DEERE & COMPANY, Plaintiff,**

v.

**SPERRY RAND CORPORATION,**
**Defendant.**

**Civ. No. F–306.**

United States District Court,
E. D. California.

Dec. 7, 1970.

Stammer, McKnight, Barnum, Bailey & Barnett, by Galen McKnight, Fresno, Cal., McDougall, Hersh & Scott, by Dugald S. McDougall and Theodore R. Scott, Chicago, Ill., for plaintiff.

Wild, Christensen, Carter & Blank, by Robert G. Carter, Fresno, Cal., Wolfe, Hubbard, Leydig, Voit & Osann, by John P. Bundock, Todd S. Parkhurst and Phillip H. Mayer, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

CROCKER, District Judge.

This is an action for a declaratory judgment under 28 U.S.C. § 2201 by which plaintiff asks that certain of defendant's patents be declared invalid and not infringed by plaintiff. These patents are Glass, No. 3,325,981, McCarty, No. 3,375,643, Glass, No. 3.383,844, and Glass, No. 3,386,233. Plaintiff also asks that this court hold that defendant is estopped to assert infringement of the Glass patent Nos. 3,383,844 and 3,386,-233. Defendant counterclaims for an injunction against infringement of certain claims of the above designated patents by plaintiff. The case was tried before this court without a jury.

At trial defendant offered evidence of infringement on the following ten claims. Claims 13, 16 and 20 of the McCarty patent No. 3,375,643 (hereinafter referred to as the '643 patent); claim 6 of the Glass patent No. 3,325,981 (hereinafter referred to as the '981 patent); claim 8 of the Glass patent No. 3,383,844 (hereinafter referred to as the '844 patent); and claims 1 and 5 of the Glass patent No. 3,386,233 (hereinafter referred to as the '233 patent). Since all of the claims of the subject patents are invalid as a result of the evidence presented at trial by plaintiff, the question of infringement is not reached.

Plaintiff and defendant's New Holland Division are companies competing with each other as well as several other large companies in the manufacture of agricultural equipment. Both parties have marketed hay harvesting machines in direct competition with each other. The plaintiff's machines are marketed under the designations Model 480 and 483 and the New Holland machine under the name "Haybine." The descriptive name commonly used in reference to both companies' machines is "mower-conditioner." They are designed to cut a hay crop such as alfalfa, to condition the crop material by passing it between two rolls so as to crack the stems of each plant, and to discharge the conditioned crop material in a windrow or a swath for drying in one continuous operation. The machines have been well received in the market.

█ The burden of proof in a declaratory judgment action involving patent infringement is on the defendant owner of the patents at issue. He has the burden of proving validity and infringement just as if he were the plaintiff suing for infringement of those patents. 6A Moore's Federal Practice § 57.-31[2], p. 3158; Philip A. Hunt Co. v. Mallickrodt Chemical Works, 72 F.Supp. 865 (E.D.N.Y.1947); Purer & Company v. Aktiebolaget Addo, 410 F.2d 871 (9th Cir.1969).

█ Normally, however, there is a statutory presumption of validity of the patents in suit. 35 U.S.C.A. § 282; Stevenson v. Diebold, Incorporated, 422 F.2d 1228 (9th Cir.1970). A judicially imposed limitation on this presumption exists where pertinent prior art was not considered by the Patent Office in granting the patent. In this situation the presumption is at least weakened if not overcome. Aerotec Industries of Calif. v. Pacific Scientific Company, 381 F.2d 795, 803 (9th Cir.1967); Ellicott Mach. Corp. v. United States & American M. & M. Co., 405 F.2d 1385, 1392, 186 Ct.Cl. 655 (1969).

Plaintiff Deere & Company challenges the validity of the patents in suit on grounds of anticipation by prior art not before the Patent Office, prior public use, prior public sale, and lack of invention.

*The McCarty Patent No. 3,375,643*

■ Since the '643 patent constitutes the primary patent in suit, it is considered first. This patent has twenty-seven claims covering a mower-conditioner substantially identical to the New Holland Haybine machine. With respect to the invalidity of the '643 patent, plaintiff relies primarily on the existence of one prior art machine which, it is agreed, was not considered by the Patent Office. The machine is the Crose hay harvester (hereinafter referred to as the Crose machine).

Uncontradicted evidence produced at trial, including one actual Crose machine, indicated that six Crose machines were manufactured and sold in 1956 and one in 1958 by the H. L. Crose Company of Tulare, California. The '643 patent was filed in 1964. While information as to the subsequent use of some of the Crose machines is lacking, the machine produced at trial was operated for a period of several years by its owner. He made his living during those years mowing and conditioning hay for growers using the Crose machine.

It is agreed that the ultimate object of the use of conditioning rolls in the two machines is somewhat different. The rolls of the Crose machine are designed to wring moisture out of the plants. On the other hand, the rolls disclosed in the '643 patent are designed to crack the stems of the plants passing between them so that water can escape more readily during the drying period. It is also designed to avoid damaging the leaves of the plants since moisture is dispersed through the pores of the leaves. Yet, this functional distinction is not of patentable significance since many prior art devices have employed this technique of conditioning.

It is conceded by defendant that the elements claimed in this patent are old. It is contended, however, that they form a new patentable combination by virtue of their unique mode of operation. It is assumed that the Patent Office considered the combination to be new when compared with the prior art before it. Therefore, the issue is whether or not the Crose machine anticipates the allegedly new combination appearing in the claims of the '643 patent.

The asserted patentable distinctions between the device of the '643 patent and the Crose machine are relatively few. The '643 device is a pull-type machine (specifically covered in claims 19, 20, 21 and 22), but the Crose machine is self-propelled. The '643 machine has an aggressive upper roll (specifically covered by claims 5, 15, 16, 17, 18, 19, 20, 21, 22, 25 and 26), but the Crose machine does not. The '643 machine has a reel with cam actuated tines (specifically covered by claims 6, 7, 8, 9, 10 and 16), but the tines of the Crose machine are not cam actuated. The speed of the rolls is faster than that of the reel in the '643 device (specifically covered in claims 1, 2, 3, 4, 5, 14, 15, 16, 17, 18, 19, 20, 23, 24, 25 and 26), but this is true of the R.P.M. speed of the Crose machine. The upper roll of the '643 device is positioned slightly ahead of the lower roll (specifically covered by claims 2, 4, 10, 18 and 26), but this is not true of the Crose machine.

Defendant argues that the new and surprising result achieved by this new combination is that the machine clogs or plugs with crop material much less frequently than heretofore has been the case with mower-conditioners and that it is able to handle more types of hay crops. Defendant asserts that their machine accelerates the crop material as it passes through the machine thereby attenuating the material so as to provide more uniform conditioning without plugging of the device. Defendant says that this accounts for the economic success of the Haybine machine as opposed to the Crose machine.

■ However, nowhere, either in the claims or the specification of the '643 patent, is this new result or mode of operation involving acceleration and attenuation mentioned. Consequently, this argument cannot be relied upon to vali-

date the patent. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 550, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); Graham v. John Deere Co., 383 U.S. 1, 25, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The only language which arguably could support the validity of some of the claims of the patent is that appearing in claim 14, among others, and seeming to be the essence of the invention as patented. Claim 14 at line 61 states: * * * "and means rotating said rolls faster than said reel to strip crop material from said tine members." The specification and several of the other claims state that this stripping action permits uniform conditioning of the crop material without clogging of the machine.

Assuming that the '643 device does so operate, the Crose machine anticipates the '643 device and any perfection of technique over the Crose machine is accomplished by means which would have been obvious to a person skilled in the art. It does not constitute patentable invention. 35 U.S.C. §§ 102, 103.

Both parties to this suit agree that the Crose machine is the most important prior art discovered and that it was not considered by the Patent Office in granting the '643 patent. The Crose machine affords a raking reel, cutter bar, guide ramp, conditioning rolls, and the other key elements of the '643 device mounted in the frame in substantially the same operational relationship. This prior art machine clearly anticipates this basic combination. 35 U.S.C. § 102. Proof of the fact that it operates successfully as a mower-conditioner appears in the uncontradicted testimony that it was used in a business relationship for a number of years.

■ The only distinctions relied upon by defendant are those already recited which admittedly are old. Where an invention is comprised of old elements, the combination must result in new and surprising consequences and not merely produce a result consistent with the expected operation of the sum of the constituent elements. Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162 (1950). This test for obviousness has been held applicable with particular strictness to mechanical combinations. Hensley Equipment Company v. Esco Corporation, 375 F.2d 432, 436–437 (9th Cir.1967). Mere improvement of performance is not sufficient. Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005 (1935); Wham-O-Mfg. Co. v. Paradise Manufacturing Co., 327 F.2d 748, 750 (9th Cir.1964). The '643 device is an improvement over the Crose machine in that it does not clog with crop material as frequently. However, this is not a new and surprising result. It is an improvement accomplished by the obvious method of selecting proven elements from known prior art devices. This is not patentable invention and the fact that the Haybine has been a commercial success does not make it so. Dymo Industries, Inc. v. Com-Tech, Inc., 391 F. 2d 335, 345 (9th Cir.1968). All the claims have been considered on an individual basis and nothing of patentable significance was found when reviewed in light of the above discussed prior art. Therefore the '643 patent is invalid.

### *The Glass Patent No. 3,325,981*

■ The '981 patent claims a mower-conditioner of the type disclosed by the '643 patent having the combination of a right angled gearbox and a counterbalancing spring which cooperate to provide power for the floating header of the machine so as to allow it to operate while the header follows the contour of the ground as the machine is pulled through the field. The essence of the invention is that the power output shaft of the gearbox is coaxial with the pivot axis of the header. Defendant again argues that although the individual elements are old, it is a new combination producing a new and surprising result. To the contrary, this invention is anticipated by the prior art patent placed in evidence by plaintiff. Since it was not

considered by the Patent Office in granting the '981 patent, the presumption of validity normally applying to a patent is weakened as previously discussed. *Aerotec.*

This prior art is the Johnson Patent No. 2,924,466 owned by plaintiff. The Johnson patent has one claim covering an adjustable draft member. However, the device is shown in the drawings and described in the specification for use on a windrower. The windrower affords a drive shaft which is coaxial with the pivot axis of what is termed a "platform" on which a cutter bar is mounted. The cutter bar is driven from the drive shaft. This "platform" corresponds to the header of the '981 patent. The "platform" is connected to counterbalance springs substantially as in the '981 patent to help maintain the "platform" in floating relation.

Several distinctions are noted. The Johnson patent does not actually show a right angled gear box and the arrangement for driving the cutter bar off the coaxial drive shaft is not precisely as that disclosed in the '981 patent. Yet, these distinctions are not of significance. As the testimony at trial indicated the most conventional manner for powering the drive shaft as disclosed in the Johnson patent would be through a right angled gearbox. Furthermore, there is no claimed advantage in using the specific arrangement of the '981 patent for driving the cutter bar from the coaxial drive shaft. The designs are clearly equivalent. Finally, the fact that the Johnson "platform" is not intended actually to ride along the contour of the ground, but is designed to be adjusted by the operator during use is not significant since the basic structural designs are the same. This operative design difference is merely a matter of preference. There is no patentable significance in the combination of the mower-conditioner of the invalidated '643 patent with the main feature of the '981 patent.

A study of the seven claims of this patent has failed to disclose any basis other than that discussed above upon which the patent could be held valid. Consequently, we hold the '981 patent to be invalid as anticipated by the prior art.

### *The Glass Patent No. 3,383,844*

The '844 patent comprises eleven claims covering a mower-conditioner of the type appearing in the '643 patent in combination with an arrangement of windrow shields mounted at the discharge end of the machine so as to deflect conditioned crop material, discharged from the rolls at relatively high speed, into a windrow or a swath as desired. Defendant relies on claim 8 which claims the combination of the mower-conditioner and the windrow shields. Defendant contends that the unique combination of the relatively high speed discharge of crop material from the conditioning rolls coupled with the positioning of the shields enables the device to consolidate a nine-foot swath of discharged crop material into a three-foot windrow without the use of an auger or similar aid. Nowhere in the '844 patent is this contention mentioned and all that is discussed or claimed is the combination.

This combination is not patentable. It is not contested that the use of windrow shields as disclosed in the '844 patent is old. The Oppel patent No. 2,992,523 and the other references cited by the Patent Office in granting the subject patent illustrate this fact. The claimed new result of consolidating a wide swath into a narrow windrow using this combination of old elements is the obvious result of their combination. The fact that the Crose machine used an auger does not militate against this result.

The claims have been reviewed in detail and there is no basis upon which validity could be established in view of the above discussion. Consequently, the '844 patent is invalid.

### *The Glass Patent No. 3,386,233*

The '233 patent is the last of the patents in suit comprising fourteen

claims and relating to an implement frame for use in a mower-conditioner such as that shown by the '643 patent. The structure of the frame in the claims is L-shaped. It provides a tapered longitudinal beam which is rectangular in cross section and extends in a horizontal attitude rearwardly of the operative elements of the mower-conditioner. Defendant argues that this is a patentable combination having the new and surprising result of affording a lightweight, strong, torsion resistant frame which is above the conditioning rolls so as not to interfere with the discharge of crop material from the rolls. The patent makes no statement, either in the specification or the claims, about being torsion resistant.

The plaintiff again presents a prior art patent not considered by the Patent Office in arguing invalidity of the subject patent. This patent is the Korsmo patent No. 2,071,844. It discloses a windrow harvester having an L-shaped frame with a horizontal, tapered frame member which is above and to the rear of the operative elements of the device. Other portions of the frame do, however, extend below the horizontal, tapered frame member. The testimony at trial indicated that the Korsmo patent reads on the '233 patent and would structurally be as strong although possibly not as resistant to torsion. What differences may exist between the Korsmo patent frame and the '233 patent frame are differences only of form and not substance, and of no patentable significance in the combination of the frame with the specific mower-conditioner claimed.

All of the claims of this patent have been carefully considered on an individual basis. None of the claims cover anything of patentable significance when viewed in light of the above discussed prior art. Therefore, this patent is invalid.

■ Evidence was produced at trial indicating that plaintiff had copied the defendant's Haybine machine in producing its mower-conditioners. This evidence, of course, goes to the issue of infringement of the patents in suit. Validity of those patents cannot be made to rest on such evidence. Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co., 375 F.2d 85, 92 (9th Cir.1967).

Judgment is granted to the plaintiff as prayed, and plaintiff is to prepare and lodge findings of fact, conclusions of law and judgment in accordance with the Local Rules of this court.

The clerk of this court is directed to serve copies of this order by United States mail upon the attorneys for the parties appearing in this cause.