**Richard S. HODGDON, Jr.**

v.

**Sterling F. and Norma L. CAMPBELL**

Supreme Judicial Court of Maine.

Feb. 20, 1980.

---

Preti, Flaherty & Beliveau, Thomas A. Cox (orally), Arthur A. Peabody, Portland, for plaintiff.

Kelly, Remmel & Zimmerman, Graydon G. Stevens (orally), Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

The defendants, Sterling and Norma Campbell, seasonably appeal from a judgment of the Superior Court, Lincoln County, entered following acceptance of a referee's report pursuant to M.R.Civ.P. 53 (e)(2). This report upheld the position of the plaintiff, Richard Hodgdon, Jr., who sought by way of declaratory judgment to quiet title to a parcel of land contiguous to the property of the defendants. The defendants argue that the Superior Court erred in accepting the report and in entering judgment thereon because the referee incorrectly interpreted language in a deed and because his finding as to the location of the disputed boundary was against the weight of the evidence. We affirm the judgment.

The plaintiff and the defendants own adjoining parcels of land on Sawyer's Island in Boothbay. The plaintiff's land lies to the east of the defendants' property. Both waterfront parcels were originally part of a larger tract owned by Lydia Linekin. In 1919, Linekin conveyed to Fred Higgins the lot now owned by the defendants. The Linekin-Higgins deed, substantially identical to all deeds in the defendants' chain of title, bounded and described the land as follows:

> Beginning on the southerly side of the town road leading northerly from so-called Sawyer's Island bridge in a stone wall at a point where it intersects said road, said wall marking the easterly line of land formerly of Albert Lewis, but now of Mrs. Vis; thence southerly by said wall to the shore opposite Indiantown Island; *thence easterly by the shore one hundred fifty feet to an iron bolt in the ledge; thence northerly parallel with said wall to a bolt in a rock on the southerly side of said road*; thence northerly and westerly by said road to point begun at, including the shore adjoining the lot as described . . . . (Emphasis added).

The property owned by the plaintiff was part of a parcel of land conveyed in 1952 by Linekin's successor-in-title, Everett Freeman Linekin, to Richard Swett, who subsequently conveyed the bulk of this property to the plaintiff by successive warranty deeds in 1972. The description of the property in the Linekin-Swett deed relevant to this litigation is as follows:

> Beginning at an iron pipe on the west side of said Town Road and being on the south side of a private road leading to the dwelling of Fred A. Higgins; *thence South 10° West by land of said Higgins 950 feet, more or less to an iron pipe on the shore opposite Indian Town Island*; thence southeasterly along said shore 231 feet to a stake on the shore; thence North 25° East 370 feet to another stake near the western edge of an oak grove . . . . (Emphasis added).

Stipulating that these deeds principally control the resolution of the controversy, the adjacent lot owners disputed the location of their common boundary—the third call in the Linekin-Higgins deed and the first call in the Linekin-Swett deed. Specifically, the parties contested the locus of the southern terminus of this boundary line, which forms the southwestern corner of the plaintiff's property and the southeastern corner of the defendants' lot. This disagreement extended to the correct course of the defendants' southerly lot line—the second call in the Linekin-Higgins deed.

On October 28, 1976, the plaintiff filed a complaint in the Superior Court, seeking a declaration as to the location of the disputed boundary line and that title to his property be quieted. The case was referred by agreement of the parties. Following hearing, the referee found for the plaintiff and the Superior Court accepted the referee's report and entered judgment thereon.

■ At the outset, we call attention to the form of action used in this case. An action for declaratory judgment is an appropriate vehicle for establishing rights in real property. The Declaratory Judgments Act, 14 M.R.S.A. §§ 5951–63, is remedial in nature and should be liberally construed to provide a simple and effective means by which parties may secure a binding judicial determination of their legal rights, status or relations under statutes and written instruments where a justiciable controversy has arisen. *See Berry v. Daigle*, Me., 322 A.2d 320, 325 (1974); 14 M.R.S.A. § 5954. The statute does not create a new cause of action; its purpose is "to provide a more adequate and flexible remedy in cases where jurisdiction already exists." *Casco Bank & Trust Co. v. Johnson*, Me., 265 A.2d 306, 307 (1970); *Berry v. Daigle, supra*, 322 A.2d at 326; *Walsh v. City of Brewer*, Me., 315 A.2d 200, 209–10 (1974). A source of jurisdiction to quiet title is found in 14 M.R.S.A. §§ 6651–61. The arcane intricacies found in the procedural requirements of these provisions represent a trap for the unwary. *See* 2 R. Field, V. McKusick & L. Wroth, Maine Civil Practice §§ 80A.6, 80A.6a (2d ed. 1970). A proceeding for declaratory relief brought in accordance

with the civil rules of procedure is a particularly efficacious method for quieting title to real property, especially in the frequently litigated boundary line dispute case. *See Smith v. Varney*, Me., 309 A.2d 229, 231 (1973) (per curiam); *Socec v. Maine Turnpike Authority*, 152 Me. 326, 331, 129 A.2d 212, 215 (1957).

Noting that a split of authority exists on the issue, this Court, in *American Motorists Insurance Co. v. LaCourse*, Me., 314 A.2d 813, 818–19 (1974), left open the question of who bears the burden of persuasion as to the merits of a declaratory judgment action.[1] All courts require the declaratory plaintiff to show jurisdiction, a justiciable controversy and the joinder of necessary parties. *Id.* at 818; *see Jones v. Maine State Highway Comm'n*, Me., 238 A.2d 226, 228–29 (1968). In the great majority of declaratory judgment actions, the plaintiff, as the party asserting the affirmative of the controlling issues, also assumes the burden of proving the prima facie elements of his asserted claim by a preponderance of the evidence.

Nevertheless, situations can arise under the declaratory judgment statute in which the normal position of the plaintiff and the defendant is reversed. For example, an insurer, who would be the defendant in an orthodox lawsuit by an insured suing on the policy, can anticipate the litigation by bringing an action seeking a declaration of non-coverage. Reasoning that the plaintiff in such cases should not be saddled with the burden of proving non-liability merely because he invoked his statutory right to a declaratory remedy or that the allocation of the burden of proof should not be controlled by the form of the action, many courts place the burden of showing liability on the defendant insured on the theory that the

risk of non-persuasion as to the ultimate issues in the case remains upon the party who would bear the burden had the issues arisen in an ordinary action to enforce the policy. *E. g., Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1174–76 (3d Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *Royal Indemnity Co. v. Wingate*, 353 F.Supp. 1002, 1004 (D.Md.), *aff'd*, 487 F.2d 1398 (4th Cir. 1973); *Traveler's Ins. Co. v. Greenough*, 88 N.H. 391, 392–93, 190 A. 129, 130–31 (1937); *cf. Board of Regents v. Dawes*, 522 F.2d 380, 383 n.9 (8th Cir. 1975) (action by university for declaration of non-discrimination), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976); *Deere & Co. v. Sperry Rand Corp.*, 322 F.Supp. 397, 398 (E.D.Cal.1970) (action by alleged patent infringer for declaration of non-infringement or patent invalidity), *aff'd*, 513 F.2d 1131 (9th Cir. 1975) (per curiam). Other courts hold categorically that the plaintiff, as the party who instituted the declaratory judgment action, always bears the burden of establishing the material assertions of his complaint. *E. g., New York Life Ins. Co. v. Stoner*, 109 F.2d 874, 876 (8th Cir.), *rev'd on other grounds*, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940); *City of Miami Beach v. New Floridian Hotel, Inc.*, 324 So.2d 715, 717 (Fla.App.1976); *Hanover Insurance Group v. Cameron*, 122 N.J.Super. 51, 55, 298 A.2d 715, 718 (1973); *see First National Bank v. Malady*, 242 Or. 353, 357–359, 408 P.2d 724, 726–27 (1965).

We believe that both fairness and the nature of declaratory relief dictate that the allocation of the burden of proof in declaratory judgment actions must be determined by reference to the substantive gravamen of the complaint. The party who asserts the affirmative of the controlling

---

1. The allocation of the burden of proof in declaratory judgment actions has been the subject of pointed commentary and debate. *See generally* E. Borchard, Declaratory Judgments 404–09 (2d ed. 1941); 6A Moore's Federal Practice ¶ 57.31 (2d ed. 1979); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2770 (1973); 22 Am.Jur.2d *Declaratory Judgments* §§ 97–98 (1965); 26 C.J.S. *Declaratory Judgments* § 148 (1956); Annot., 23 A.L.R.2d 1243 (1952). Proponents of an automatic rule placing the burden of proof on the plaintiff have argued that by initiating the action the plaintiff can choose the time and forum of litigation and can also secure other advantages in the litigation of the action. *See Developments in the Law—Declaratory Judgments*, 62 Harv.L.Rev. 787, 837–38 (1949); Note, *Burden of Proof in Declaratory Judgment Actions*, 1941 Wis.L. Rev. 513, 516–21.

issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of non-persuasion. *See Preferred Acc. Ins. Co. v. Grasso*, 186 F.2d 987, 991 (2d Cir. 1951); *Ross v. American Radiator & Standard Sanitary Corp.*, 507 S.W.2d 806, 810 (Tex.Civ.App.1974). In the instant case, the plaintiff bears the burden of proof not because he filed the action for declaratory judgment but because the plaintiff in a quiet title action has the burden of proving better title than that of the defendant. *Compare Smith v. Varney, supra*, 309 A.2d at 233, *with Hann v. Merrill*, Me., 305 A.2d 545, 550 (1973). *See also Powell v. Trustees of Schools*, 415 Ill. 236, 240, 112 N.E.2d 478, 481 (1953). This conclusion is consistent with the principle that declaratory judgment is a remedial device and does not enlarge the jurisdiction of the court. *E. g., Casco Bank & Trust Co. v. Johnson, supra*, 265 A.2d at 307. To adopt a per se rule that the plaintiff in a declaratory judgment action bears the risk of non-persuasion on the merits would in certain cases allow the form of the remedy to shift the burden of proof. Nothing in the declaratory judgment statute requires that the party who has the right to adjudicate a disputed claim by an action seeking declaratory relief also has the duty to prove the claim unfounded. *Accord, Traveler's Ins. Co. v. Greenough, supra*, 88 N.H. at 393, 190 A. at 131.

At the hearing before the referee, both parties produced expert testimony by surveyors in support of their positions. The plaintiff contended that the southern terminus of the disputed boundary was a drill hole located in the ledge on the shoreline 150 feet, measured along the contour of the high-water mark, from the southwestern corner of the defendants' lot. The location of the disputed boundary, the plaintiff argued, was a straight line running northerly from this drill hole to a bolt located at the side of the town road. The defendants maintained that the southern end point of the disputed boundary was a large rock 215 feet along the shore from their southwestern corner, arguing that the 150-foot distance call in their deed must be measured in a straight line between the two points on

the shore because a 150-foot measurement along the high-water mark was repugnant both to the parallel-to-the-stone-wall direction contained in the third call of their deed and to the direction call of the westerly and distance call of the southerly boundaries of the plaintiff's lot as described in the Linekin-Swett deed.

The referee found that the drill hole once contained an iron stub and that this drill hole was the "iron bolt in the ledge" referred to in the defendants' source deed as the monument establishing the southern end point of the common boundary. As a matter of law, the referee concluded that the 150-foot distance "by the shore" contained in the second call of the defendants' source deed was to be measured along the shore rather than in a straight line and that in the context of deed descriptions the word parallel meant "with like direction or tendency" or "running side by side" rather than geometrically or mathematically equidistant.

■ The referee apparently concluded that as between the Linekin-Higgins deed in 1919 and the Linekin-Swett deed in 1952 he would look to the earlier deed in resolving the dispute. By this source deed of the defendants, Lydia Linekin initially established the boundary line between the two lots. The location of the easterly sideline described in the 1919 deed, which is duplicated in every deed in the defendants' chain of title, necessarily determines the westerly sideline of the plaintiff's lot. Because the 1952 deed referred to the easterly boundary of the defendants' property, that boundary, when and if established, is a monument vis-a-vis the plaintiff's deed and would control any inconsistent courses, distances or quantity contained therein. *Kinney v. Central Maine Power Co.*, Me., 403 A.2d 346, 350 (1979); *Liebler v. Abbott*, Me., 388 A.2d 520, 521–22 (1978); *McCausland v. York*, 133 Me. 115, 123, 174 A. 383, 387 (1934). Therefore, the referee did not err in determining the location of the disputed boundary by reference to the defendants' deed.

The respective functions of the court and the fact finder in resolving boundary line disputes are well settled. " 'What are the boundaries is a question of law, and where the boundaries are is a question of fact.' " *Liebler v. Abbott, supra*, 388 A.2d at 521, *quoting Rusha v. Little*, Me., 309 A.2d 867, 869 (1973). On appeal, the defendants do not challenge the legal determination of the referee that the word parallel means "with like direction or tendency." *Universal Home Builders, Inc. v. Farmer*, 375 S.W.2d 737, 743 (Tex.Civ.App.1964). Rather, the defendants argue that the referee's interpretation of the deed language "by the shore" is erroneous as inconsistent with the grantor's intention manifested by the "northerly parallel" third call and the "including-the-shore-adjoining-the-lot" language of their source deed. The defendants also challenge as against the weight of the evidence the referee's factual determination that the drill hole represented the southern terminus of the disputed boundary.

Although in construing deeds the law attempts to ascertain the intention of the parties, this Court has repeatedly stated that " 'to secure the certainty, precision and permanency of muniments of title, certain positive rules of law have evolved which are made to control and parties to real estate transactions must heed the same, if they would effectuate their intent, or avoid consequences they did not intend.' " *Rusha v. Little, supra*, 309 A.2d at 870, *quoting Perkins v. Conary*, Me., 295 A.2d 644, 646 (1972). As a matter of law, a deed reference "by the shore" calls for a measurement along the contour of the high-water mark. *Dunton v. Parker*, 97 Me. 461, 466, 54 A. 1115, 1117 (1903); *see Whitmore v. Brown*, 100 Me. 410, 414, 61 A. 985, 987 (1905). "The 'shore' is the ground between the ordinary high and low water mark—the flats— and is a well defined monument." *Montgomery v. Reed*, 69 Me. 510, 514 (1879). As a monument, the shore limits the grant to the high-water mark. *McLellan v. McFadden*, 114 Me. 242, 247, 95 A. 1025, 1028 (1915). Monuments control inconsistent courses, distances and quantity. *E. g.,*

*Mayer v. Fuller*, Me., 248 A.2d 140, 141 (1968). The "including-the-shore-adjoining-the-lot" language operated to convey the flats excluded in the grant "by the shore."

The factual finding of the referee as to the location of the disputed boundary will not be disturbed unless clearly erroneous. M.R.Civ.P. 53(e)(2); *see, e. g., Sargent v. Coolidge*, Me., 399 A.2d 1333, 1339 (1979). It is undisputed that the drill hole in question is located 150 feet along the high-water mark from the southwestern corner of the defendants' property. A surveyor called by the plaintiff testified that at the time of his survey four years earlier he had found the stub of an iron bolt in the drill hole and that in his opinion the drill hole was the southern locus of the common boundary. "The weight to be given to the opinions of surveyors, as well as the credibility of any witness, is the prerogative of the trier of facts, here the [referee]." *Sargent v. Coolidge, supra*, 399 A.2d at 1339. Our review of the record satisfies us that credible evidence supports the findings of the referee that the drill hole represents the southern terminus of the common boundary and that the disputed sideline runs northerly in a straight line from the drill hole to the monument at the road.

Because the referee correctly interpreted the controlling deed and because his location of the disputed boundary is supported by competent evidence of record, the Superior Court did not err in accepting the report and in entering judgment thereon.

The entry is:

Appeal denied.

Judgment affirmed.

POMEROY and ARCHIBALD, JJ., did not sit.