**Mabel CHICKERING**

v.

**Mary YATES et al.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1980.

Decided Sept. 3, 1980.

Southard, Hunt, Hebert & Hayes, George H. Hunt (orally), Augusta, for plaintiff.

Smith & Smith, Richard W. Smith (orally), Bath, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY and ROBERTS, JJ.

PER CURIAM.

Mabel Chickering appeals from an order of the Superior Court denying her the relief she requested under 14 M.R.S.A. §§ 6651–54 (Summary Proceedings to Quiet Title) and dismissing her complaint.[1] We affirm the judgment.

The case before us presents a record of procedural nightmare. On at least two occasions the case reached the state of scheduled jury trial without either party recognizing the necessity for a preliminary order by the court sitting without jury under 14 M.R.S.A. § 6654. That section provides in part: "The court shall make such decree

_____

1. Although not dispositive of all of the claims of the parties, the judgment was ultimately rendered "final" by express direction of the court under Rule 54(b), M.R.Civ.P.

respecting the bringing and prosecuting of such action as seems equitable and just."

On the day of trial, the presiding justice sorted out the complexities involving this action and another related action with other multiple parties.[2] The plaintiff and the defendant[3] herein stipulated that the jury might be excused during the preliminary stage and that if the plaintiff succeeded in the necessary proof under the statute, then the defendant would proceed to prove his title to the jury.

By her complaint, the plaintiff sought a summary order to compel the defendant to bring an action to prove his title to land as provided by 14 M.R.S.A. §§ 6651–54.[4] She alleged uninterrupted possession for more than six years by herself, those under whom she claims and those claiming under her of the land described as follows:

A certain lot or parcel of land in Bristol in the County of Lincoln and State of Maine bounded and described as follows: Commencing at an iron pin on the east line of Route # 130 in the Town of Bristol said iron pin being on the north line of land formerly of Albert Hunter (in 1925) and now or formerly owned by Wilbur Hunter; thence northerly along the east line of Route # 130 thirteen hundred sixty–six feet (1366') to an iron pin, said iron pin being in the southerly line of land formerly of Margaret Goudy and land of Henry Blaney (in 1925) and now at the southerly line of land of Robert Bowlby; thence easterly along the southerly line of Robert Bowlby five hundred fifty feet (550') more or less to a wooden stake; thence southerly in a line more or less parallel to the east line of Route # 130 to the north line of land formerly of Albert Hunter (1925) and now or formerly of Wilbur Hunter; thence westerly along the north line of land now or formerly of Wilbur Hunter Five hundred fifty feet (550') to the point of beginning. Containing seventeen (17) acres more or less.

The plaintiff also alleged the conveyance by her warranty deed of some five parcels out of the property above described. The complaint asked, *inter alia*,

1. That Defendant Philip J. Nichols may be summoned to show cause why he should not bring action to try his title to the premises described in paragraph 2 of the Amended Complaint as provided in 14 M.R.S.A., Section 6651.

.    .    .    .    .

ises adverse to his said estate; and that such apprehension creates a cloud upon the title and depreciates the market value of the property; and praying that such persons be summoned to show cause why they should not bring an action to try their title to the described premises.

14 M.R.S.A. § 6654 provides in part:

If any person so summoned appears and claims title or an easement in the premises, or voluntarily appears as aforesaid and claims title or such easement, he shall by answer show cause why he should not be required to bring an action and try such title, or his title to such easement. The court shall make such decree respecting the bringing and prosecuting of such action as seems equitable and just. . . . Any party may at his option assert such title or such easement by counterclaim in the plaintiff's action, but he shall not be required to do so. Trial of any action brought pursuant to a decree hereunder or of any counterclaim asserting such title or such easement shall be by jury, if brought in the Superior Court, unless waived.

---

**2.** *Nichols v. Brackett,* CV–76–104.

**3.** This action was commenced against one Philip J. Nichols. On the day of trial, subsequent to his decease, there were substituted as defendants his heirs and the administrator of his estate. For our purposes, we treat the defendants as a single entity.

**4.** 14 M.R.S.A. § 6651 provides in part:

A person in possession of real property, claiming an estate of freehold therein or an unexpired term of not less than 10 years, or a person who has conveyed such property or any interest therein with covenants of title or warranty, upon which he may be liable, may, if he or those under whom he claims or those claiming under him have been in uninterrupted possession of such property for 4 years or more, bring an action . . . setting forth his estate, stating the source of his title, describing the premises, and averring that an apprehension exists that persons named in the complaint, or persons unknown claiming as heirs, devisees or assigns, or in any other way, by, through or under a person or persons named in the complaint, claim or may claim some right, title or interest in the prem-

3. That in the event the Court orders the Defendant, Philip J. Nichols to try his title the Court enters its judgment respecting the bringing of such action as seems equitable and just.

The defendant answered by disclaiming title to a parcel of land having approximately 429 feet of frontage on Rt. 130, varying in depth from 99.5 feet to 576.9 feet (possibly part of the southerly and easterly portion of plaintiff's claim). The defendant specifically denied the plaintiff's possession of any land northerly and westerly of the parcel disclaimed. The defendant asked, *inter alia,*

A. That the Plaintiff be ordered to join the pending case of Nichols vs. Brackett et als., docket # 76–104.

B. That the Defendant not be summonsed to try his title to the premises described in Paragraph 2 of Plaintiff's complaint in an action apart from docket # 76–104, which will litigate the same issue.

Compounding the problem is the fact that the several outsales (allegedly within the boundaries of plaintiff's claim) were identified only as commencing at an iron pin somewhere on Rt. 130. Exactly what the defendant disclaimed in relation to what the plaintiff claimed cannot be determined from the pleadings.

At the preliminary hearing, the plaintiff offered evidence purporting to establish the requisite "uninterrupted possession for four years or more" of the real property described in her complaint. Through testimony of herself and others, the plaintiff established that she and her predecessors in title had occupied what was referred to as the Cushman farm. The plaintiff testified that she had resided with her mother on what was described as the Cushman farm from 1925 to 1948, at which time the house burned. Thereafter she and her husband conducted various activities in and upon an area in the

vicinity of Rt. 130. She sold stumpage and gravel during the sixties. She conveyed the various parcels referred to in her complaint between 1969 and 1973. She expressly stated that what she claimed to own was entirely within the description contained in her deed.[5] That description is substantially the same as in an 1894 conveyance from Charles Trask to George A. Cushman and in a 1925 conveyance from George A. Cushman to Mary L. Chapman (the plaintiff's mother) and in a 1961 conveyance from other heirs of Mary Chapman to the plaintiff. It reads as follows:

bounded and described as follows:

Northerly by land formerly of Margaret Goudy and land of Henry Blaney; Easterly and Southerly by land now or formerly of Albert Hunter; and Westerly by land now or formerly of the heirs of Robert Hunter. Containing *eight* acres more or less.

Being the same premises conveyed by George A. Cushman to Mary L. Chapman, by deed dated January 2, 1925, and recorded in Lincoln County Registry of Deeds, Book 371, Page 262. (Plaintiff's Exhibit 8) (Emphasis added).

■ The plaintiff also presented the testimony and a plan of Larry Slaughter, a registered land surveyor. Mr. Slaughter identified the Cushman farm, so–called, as lying on both sides of Rt. 130 (3 acres on the westerly side), extending about 1300 feet along the easterly side of Rt. 130 and being more than 1000 feet in depth easterly of Rt. 130 (14 acres on the easterly side). The description in the complaint would include about one–half of the latter portion or 7 acres. Mr. Slaughter disregarded the acreage discrepancy, disregarded a 1953 State Highway Department survey and deeds to that department from plaintiff as well as defendant, and was unable to explain contradictory record evidence in his interpretation of deeds to the Cushman farm.[6] He

---

5. Defendant offered to stipulate to plaintiff's possession of the property as conveyed in her deed (Plaintiff's Exhibit 8).

6. There was some evidence that Margaret Goudy and/or Henry Blaney may have owned a

parcel between the north line of the Cushman farm and the south line of the Bowlby land. The complaint describes the Goudy, Blaney, *and Bowlby* south line as identical.

disregarded the description of the second parcel conveyed to the defendant in 1940 from heirs of J. W. P. Goudy on the grounds that it was inconsistent with the. inventory of the Goudy estate. We cannot say that the presiding justice was clearly erroneous in rejecting the testimony of Mr. Slaughter as it relates to the identification on the surface of the earth of the land conveyed to Cushman and ultimately to the plaintiff. *See Sargent v. Coolidge*, Me., 399 A.2d 1333, 1339 (1979).

We recognize that the question of title to real property, *per se*, is not in issue in these summary proceedings and that the purpose of the hearing is to determine whether the defendant should be required to bring an action to prove his title. As stipulated on the record, the plaintiff must establish that she "is in possession of real property claiming an estate of freehold therein or an unexpired term of not less than 10 years and that there has been uninterrupted possession for four years or more."

Prior to the commencement of this action the defendant had brought suit for title and possession [7] against some of Mabel Chickering's grantees. See 14 M.R.S.A. § 6701; M.R.Civ.P. 80A. To that extent the very relief that plaintiff here sought had already been accomplished. Apparently the plaintiff chose not to defend that action under her covenants of warranty, but instead, sought to compel the defendant to bring a new action involving a larger and different parcel of land. In so doing, she became snared in "the arcane intricacies found in the procedural requirements" of the statutes. *Hodgdon v. Campbell*, Me., 411 A.2d 667, 669 (1980); *see* 2 R. Field, V. McKusick & L. Wroth, Maine Civil Practice §§ 80A.6, 80 A.6a (2d ed. 1970).

The presiding justice referred to this statutory provision as "an historical anomaly" and with good reason.[8] At common law, the ancient writs provided relief only to one who had been disseized of his real estate.

Only equitable remedies were available to quiet title of one in possession and the courts of Massachusetts originally were denied equity jurisdiction, except in narrowly defined areas. In 1852, Massachusetts established a statutory procedure similar to section 6651 by which one in possession of land could compel an adverse claimant to bring an action at law to prove his title or disclaim any rights in the property.

Meanwhile the manifold common law real actions had been combined into one writ of entry and, in Maine, many of the procedural prerequisites were abolished, including the necessity of proving a disseizin. *See Sargent v. Coolidge*, Me., 399 A.2d 1333, 1340 (1979). Since 1840 our substantive law concerning writs of entry has changed little, while the terminology now used is "real action." 14 M.R.S.A. § 6701; M.R.Civ.P. 80A. Additionally, Maine courts were granted full equity jurisdiction in 1874. Nevertheless, in 1883 the legislature enacted the predecessor of section 6651 to cure a supposed defect in available remedies. *See Marshall v. Walker*, 93 Me. 532, 45 A. 497 (1900). The procedural complexities of the section 6651 complaint are today only slightly less cumbersome than the common law writs or original bills in equity.

Although these proceedings have been called "an action at law to quiet title," the statute was traditionally invoked by petition addressed to the initial equitable determination of the court sitting without a jury and seeking an order in the nature of equitable relief to compel the respondent to commence an action at law, either by writ of entry or suit for trespass. *Smith v. Libby*, 101 Me. 338, 342, 64 A. 612 (1906). The statute was strictly construed and relief granted sparingly in Massachusetts. *See, e. g., Hill v. Andrews*, 12 Cush. 185, 66 Mass. 185 (1853); *Dewey v. Bulkley*, 1 Gray 416, 67 Mass. 416, (1854); *Macomber v. Jaffray*, 4 Gray 82, 70 Mass. 82 (1855); *Munroe v. Ward*, 4 Allen 150, 86 Mass. 150 (1862) (all denying to petitioner the relief request-

---

7. *Nichols v. Brackett*, CV-76-104.

8. *See generally* Comment, *Maine's Actions to Try Title: A Historical Perspective* (April 13,

1979) (to be published in *Me. Law Review*, Vol. 32, No. 2 (1980)).

ed). Actions under the statute were described as a very special class of cases and proof of actual possession and taking of profits required in *Munroe v. Ward, supra.* Such construction of the statute was described as reasonable rather than strict "having reference to the end sought, and the means of securing it" in *Boston Mfg. Co. v. Burgin,* 114 Mass. 340 (1874). The court also observed that "respondent will not be required to bring a suit unless it is made to appear that the right which he claims can be *fairly and conclusively tried* by such a suit as may be directed." *Id.* at 341. (Emphasis added.) The discretion vested in the trial court was also recognized in *Clouston v. Shearer,* 99 Mass. 209 (1868).

Any suggestion that Maine decisions reveal a different interpretation may be dispelled by examination of their procedural posture. *Marshall v. Walker,* 93 Me. 532, 45 A. 497 (1900) and *Ginn v. Ulmer,* 105 Me. 286, 74 A. 635 (1909) were each presented to the Law Court on exceptions to the overruling of a demurrer. Thus the allegation of possession must be taken as admitted. Between those two cases, in 1906 the Maine Court endorsed verbatim the language of *Boston Mfg. Co., supra,* and added that placing the burden of proof upon the petitioner was "no objection to leaving him to pursue a remedy in his own name, instead of seeking to compel the respondent to go forward." *Smith v. Libby,* 101 Me. 338, 342, 64 A. 612, 614 (1906).

■ The plaintiff's initial burden includes proving possession, not just of some land, but of a specific, identifiable parcel of land. Furthermore, that portion of the surface of the earth so identified must be located with reference to the legal description contained in the complaint. In addition, the possession must be continuous and exclusive for the four years preceding the commencement of the action. Finally, the court must be satisfied that it is equitable and just to direct the bringing of an action such as that sought by the plaintiff.

Having these prerequisites in mind, it becomes apparent that the summary proceedings "at law" can become "a trap for the unwary." *Hodgdon v. Campbell,* Me., 411 A.2d 667, 669 (1980). These difficulties are particularly significant when the underlying issues involve boundary–line disputes between adjacent owners, and when, as here, plaintiff's claim of title may be based in part upon adverse possession.

■ When the legal boundary is undisputed (*i. e.,* the southerly boundaries of land formerly owned by Goudy and Blaney) but its location on the face of the earth (a factual question) is disputed, it may not be "equitable and just" to require the defendant to bring a real action (writ of entry) to prove, not that he has title beyond the boundary, but where the boundary is located. Similarly, when the plaintiff claims to have acquired title by adverse possession to any land beyond her legal boundaries (wherever they are), it may not be "equitable and just" to require the defendant to bring a real action (writ of entry) to prove where the plaintiff's occupancy occurred, if any, with relation to the defendant's legal boundaries. A mere intrusion cannot be considered adverse occupancy of the whole, as the plaintiff herein contends, unless accomplished under a deed of conveyance.

As the presiding justice found "(1) the plaintiff has failed to establish . . . uninterrupted possession of the property *described in her complaint* . . . [and] (3) the plaintiff has failed to establish the property *to which she claims title* so that it may be ascertained what is the legal description of the property, the title to which is to be litigated." (Emphasis added.) Mr. Slaughter failed to satisfy the justice as to where the boundaries of plaintiff's record title (as to which she in testimony limits her claim) were in relation to the description contained in the complaint. And plaintiff's other evidence failed to establish where her acts of possession occurred with relation to either the complaint description or the boundaries according to her record title.

The plaintiff argued at the hearing that certainly the conveyances by warranty deed of the plaintiff and possession by the respective grantees would fulfill the statutory requirements. This argument ignores the

fact that the defendant had already commenced the real action (writ of entry) against those as to whom he had an adverse claim. As we noted above, on the evidence herein the court could not determine the exact location of those conveyances with reference to either plaintiff's record boundaries, or the description contained in the complaint.

The plaintiff suggests that bias on the part of the presiding justice deprived her of a fair trial. She suggests that bias resulted from the justice's "hostility" toward the remedy she selected. We have reviewed the entire record with great care and find no evidence of any bias against the plaintiff in any of the court's rulings. On the contrary, we find that the justice repeatedly attempted to explain the procedural hazards the plaintiff faced and to assist in clarifying ambiguous testimony. In plaintiff's reply brief (p. 16), she says the justice "seemed to indicate . . . that he also had that authority [to repeal statutes] . . ." and she quotes ". . . *I* do not . . . intend this statute to be used." The record reflects that the comment continued as follows: ". . . to be used as a device to force someone else to prove title to a piece of land not appropriately described so that they don't know what it is they have to prove title to."

The defendant urges us to dismiss the appeal as moot or, in the alternative, to stay decision herein on the grounds that, subsequent to the hearing herein, the plaintiff became a party in the related case of *Nichols v. Brackett et al.*, CV–76–104. We deem it inappropriate to either stay or dismiss this appeal, because it appears from the limited record before us that the action in 76–104 is not identical in scope to the action sought to be mandated herein.

We have also considered the plaintiff's objections to certain rulings on admissibility of evidence and find them to be without merit.

The entry will be:

Appeal denied.

Judgment of dismissal affirmed.

All concurring.